## McDERMOTT *v.* SEVERE.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 244.   Argued April 20, 23, 1906.—Decided May 28, 1906.

The motorman of a trolley car, which was rapidly approaching a place where a small boy was trying to assist his smaller brother to extricate his foot from the track, made no effort to stop the car when he first saw the boys, supposing, as he testified, that they were playing on the track, as many boys did, until the last moment and that they would, as usual, get off the track in time; when the car was within a few yards of the boys he

saw and realized their situation, and did what he could to stop the car, but did not succeed in doing so and one of the boys was so injured that one of his legs had to be amputated. In the trial court the jury found the defendant company guilty, on a special verdict, of negligence in the improper construction of the crossing and also in the management of the car, and it was consented that the jury find that the motorman did all in his power to stop the car when he saw that the boy's foot was caught. In affirming the judgment entered on the verdict and passing on questions of sufficiency of evidence to submit questions to jury, *Held,* that:

Negligence only becomes a question of law to be taken from the jury when the facts are such that fair-minded men can only draw from them the inference that there was no negligence; and if, from the facts admitted or conflicting testimony, such men may honestly draw different conclusions as to the negligence charged, the question is not one of law but of fact, to be settled by the jury under proper instructions; and in this case it was properly left to the jury to determine whether the motorman was guilty of negligence in not getting his car under control so that in event of probable injury he could quickly and promptly stop it.

The court properly left it to the jury to determine whether the motorman exercised reasonable care to avoid injury to the boys which the circumstances required, taking into consideration that they were children and that older people are chargeable with the duty of care and caution towards them.

An exception of general character to a charge covering a number of elements of damages will not cover specific objections which in fairness to the court should be called to its attention in order that it may if necessary correct or modify its instructions.

It was not error for the trial court in the case of a boy who has lost a leg to charge that the jury can consider mental suffering past and future found to be the necessary consequence of the loss of his leg. The action being one for injury to the person of an intelligent being if the injury produced mental as well as bodily anguish it is impossible to exclude the former in estimating the extent of the injury.

Where the court instructs that the sum claimed should not be taken as a criterion but that it is a limit beyond which the jury cannot go there is no error.

THE facts are stated in the opinion.

*Mr. George P. Hoover* and *Mr. Charles A. Douglas* for plaintiff in error.

*Mr. A. S. Worthington, Mr. William Meyer Lewin* and *Mr. Charles L. Frailey* for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

This is an action to recover damages because of an injury received by Charles E. Severe, an infant, who was run over at a plank crossing of the railway company, the railroad then being in charge of the defendant, operating the same as. receiver.

The plaintiff below recovered judgment in the Supreme Court of the District, which was affirmed in the Court of Appeals.

At the place of the accident there was a plank crossing, the planks laid between and on either side of the rails, at a point where a street was opened to the westward, and on the other side of the track, a footpath, but no thoroughfare for vehicles. The crossing was one of the regular stopping places of the cars of the street railway near Riverdale, Maryland. The words "Cars stop here" were on both sides of the telegraph pole at the crossing. At the time of the injury plaintiff was six years and ten months old. His youngest brother Raymond was a little over five years of age, and with them another brother, Edward, about nine years old. The injured boy, at the time he was hurt, had his foot caught in a space between the rail and the edge of the plank on the inside. There was testimony tending to show that this opening was two to two and eleven-sixteenths inches wide. The accident happened between two and three o'clock in the afternoon of August 31, 1902. The testimony discloses that the boys had expected to meet their parents returning from a visit, about two o'clock that afternoon, and went to the crossing for that purpose. Edward the oldest boy, went to his father's house nearby to get a drink of water; while he was gone the youngest boy, Raymond, got his foot caught in the space between the west rail and the plank next the inside of the rail. Plaintiff came to the assistance of his little brother, whose foot he helped to extricate, and was himself caught in the space between the plank and the rail. Raymond ran to the house to notify Edward that

the plaintiff's foot was caught. Together the two boys ran back towards the crossing, and shortly thereafter the plaintiff was struck and so severely injured that it became necessary to amputate his leg below the knee.

In the view we take of this case we do not consider it necessary to state in detail the testimony as to the construction of the crossing and the alleged negligence in leaving the space in which the boy's foot was caught. Under the pleadings and the testimony the jury was directed to return a special verdict upon three propositions: 1. Was the defendant guilty of negligence in the improper construction or maintenance of the crossing? 2. Was the defendant guilty of negligence in the improper management of the car? 3. Did the motorman do all in his power to stop the car as soon as he saw the plaintiff's foot was caught in the space between the rail and plank? The jury answered the first and second questions in the affirmative; being unable to agree on the third, the plaintiff consented that it might also be answered in the affirmative.

In view of these special findings, if the issue concerning either of the first two of them was properly submitted to the jury upon sufficient evidence and found against the company, the judgment of the Court of Appeals must be affirmed.

In delivering the opinion of the Court of Appeals Mr. Chief Justice Shepard says:

"It is conceded, by reason of the special findings of the jury, that the defendant was guilty of negligence, not only in the construction and maintenance of the crossing, but also in the management and control of the car; that error in the instructions upon both points must be shown in order to obtain a reversal of the judgment, because either finding alone is sufficient support therefor."

It is insisted in argument here that the court ought to have taken the case from the jury because of the insufficiency of the evidence to sustain a verdict. In the view we take of the case as made and submitted concerning the conduct of the motorman at the time of the accident and the instructions given to

the jury in that connection, we do not deem it necessary to consider the correctness of the charge submitting the question as to the negligent construction of this crossing. We think the testimony was ample to carry the case to the jury upon the question of the negligent conduct of the motorman at the time of the injury, and that this issue was properly left to the jury under instructions which afford no ground for reversal.

Negligence only becomes a question of law to be taken from the jury when the facts are such that fair-minded men can only draw from them the inference that there was no negligence. If fair-minded men, from the facts admitted, or conflicting testimony, may honestly draw different conclusions as to the negligence charged, the question is not one of law but of fact, and to be settled by the jury under proper instructions. *Railroad Company* v. *Powers*, 149 U. S. 43; *Railroad Company* v. *Everett*, 152 U. S. 107.

In addition to the facts to which we have adverted upon the branch of the case which we deem it necessary to consider, the testimony tended to show that there was nothing to prevent the motorman from seeing the crossing for a distance more than sufficient to have avoided the injury by controlling or stopping his car; that the boy Edward waved his hat and "hollered". for the motorman "to stop," when the car was 50 or 60 feet away. A passenger who was on the car testified that his attention being called by the motorman ringing his bell he saw a larger boy than the one on the track, waving his hand. Another passenger testified that when from sixty to one hundred yards from the place he saw three boys apparently standing on the platform or crossing. Plaintiff says that just before he was hurt he saw his brother waving his hat and "hollering" to the motorman, and that he too waved his hand at the motorman. Witnesses testified that the car when stopped came up with a sudden jolt. There was also testimony tending to show that boys were in the habit of playing at this crossing and running back and forth over it.

The motorman testified that he was in charge of the car and

was on the Washington bound track at the time; that he saw
the boys when he was about three or four hundred feet away;
when he first saw them there were three boys on the track,
running and jumping backwards and forwards on the crossing.
He sounded his gong when he approached, about one hundred
and fifty feet away, and repeatedly thereafter until he reached
the boy; when he first saw that the boy was not going to get
off the track he was about thirty or thirty-five feet away from
him; that he then put on the brakes, reversed the power, and
did everything possible to stop the car. He had often seen
the plaintiff on the track at that place and on the crossing at
Riverdale, Maryland; that he had seen him remaining on the
track until the car got close to him, when he would jump off
the track, clap his hands and laugh; had seen the plaintiff and
other boys do the same thing; the first thing that indicated
to him that the boy would not get off the track was when he
saw that his foot was caught; that at that time he was from
thirty to thirty-five feet from him; that he did not see the
boys wave their hands or hats or making any motions to him
or did not hear them calling to him. There was testimony
tending to show on the part of the plaintiff below that he was
not in the habit of playing at this crossing, and that he and
his brothers had not been there before in the manner stated
by the motorman. The motorman testified further that he
saw the boy on the track when he was about three or four
hundred feet away.

We are of opinion that in the attitude of the case on this
subject it was not error to leave to the jury, under proper
instructions, to find whether or not there was negligence in
managing the car just before the accident occurred. Upon
this part of the case the instructions requested were as follows:

"If the jury shall find from the evidence that the motorman
sounded his gong when he was far enough away from the plain-
tiff and his associates so that they had sufficient time to leave
the track before the car reached them, he had the right to
assume that they would do so, and he was not required to

commence to stop the car until such time as he discovered that
the plaintiff had his foot caught between the rail and the plank;
and if they shall further find that as soon as the motorman
made such discovery he did all in his power to stop the car
before it struck the plaintiff, then they should find for the
defendant.

"If the jury find from the evidence that the motorman
sounded the gong when he was far enough away from the
plaintiff and his associates, so that they had sufficient time to
leave the track before the car reached them; and if they shall ·
further find that as soon as the motorman saw that the plain-
tiff would not or could not leave the track before the car
reached him, he did all in his power to stop the car before it
struck the plaintiff, and shall further find that the construction
was not negligent, then they should find for the defendant;
and in determining whether the motorman should have com-
menced to stop the car before he did they may consider the
fact, if they find it to be a fact from the evidence, that plaintiff
and others were in the habit of standing on the track and
leaving it as the car approached near them, and whether he
saw any waving from any one before he commenced to stop
the car."

Upon this subject the court said to the jury:

"On the other question, as to whether the motorman did
all that he could possibly do under the circumstances to avert
this danger you will have to consider all the testimony, not
only that of the plaintiff, but of the defendant, and try to
reconcile it as far as you can in order to ascertain where the
fact lies. Was it prudent in that motorman, under all the
circumstances of the case, to calculate that these children
would be off from the track and out of danger when he got
there? Or was it requisite for him, as a prudent and reason-
able man, to have his car under control so that he could stop
very suddenly in case they were not out of danger when he
got there? Of course, in determining that question, you are
to consider what had been the habit of children about playing

at that place. You are not to attribute any contributory negligence to the plaintiff, because this plaintiff is less than seven years of age and the law does not give him discretion. Adults have to look out for children of that kind. But at the same time he may have been in the habit of jumping off and on that track in such a way that the motorman might have been justified in concluding there would be no danger. You are to look at all the surrounding facts and see whether that is true, whether he was justified in that calculation. There was one boy still smaller than the boy who was injured, and according to the motorman's own statement the three boys were running back and forth across the track. It is for you to determine whether or not he should have gotten into close proximity to them without getting his car under such control that he could have stopped very suddenly if necessary to prevent an accident. Of course, after he saw that the boy's foot was caught, he must do everything to stop the car. But I call your attention to the time before he could see that the boy's foot was caught and ask you to consider what it would have been prudent for him to do before that time, considering all the surrounding circumstances, considering the formation of this plank crossing, of this track and of this platform, and considering the fact, as the motorman says it was a fact, that children were frequently there running back and forth. Should he have anticipated that there might have been some kind of danger there, and should he have stopped his car or gotten it under control before he even saw any signal or waving or before he saw that the boy's foot was caught? Of course after he saw that the boy's foot was caught it must be his duty to stop just as soon as he can in order to prevent the accident. I have no doubt he did that. But whether he discharged his whole duty towards these children, whom he admits having seen there before that time, is a question for the jury.

"In considering the question of the liability of the defendant on either of the two foregoing grounds, the jury are instructed that they have a right to take into consideration the

evidence tending to show that the place where the accident occurred was a public crossing and that it was frequented, and that it was known to the motorman in charge of the car to be frequented, by young children, as well as by older persons.

"It is a question for the jury whether the motorman should have commenced to stop the car sooner than he did, and in determining that question they should take into consideration the fact, if they find it to be a fact, that the plaintiff and other boys were in the habit, at the point in question, of standing on the track until the car was very near them and then jumping off.

"In determining the question of how far the car was from the platform when the boys waved their hands they must be governed by the evidence, and not by speculation."

The substance of the requests of the defendant on this part of the case was that the motorman having sounded his gong far enough away to give warning to the boys in time to get off the track before the car reached them, did all his duty required, provided, that as soon as he saw that the boy could not or would not leave the track, he did all in his power to stop the car before the injury. On the other hand, the court left it to the jury to say whether, under the circumstances shown, the motorman was or was not guilty of negligence in failing to get his car under control, so that in the event of probable injury he could quickly and promptly stop it.

We think the court did not err in its charge in this respect and that the motorman had no right to assume that boys of tender age, such as the plaintiff, might not be caught upon the crossing, notwithstanding his signals, which would have been adequate to warn one of mature years of approaching danger. Plaintiff was not a wrongdoer. He had gone upon the track with a view of rescuing his brother, and was himself caught and was unable to extricate his foot from the space between the rail and the plank. It is not contended that he was guilty of any contributory negligence. He was a child of tender years;

the testimony is undisputed that children were in the habit of playing at and near this crossing; that they were at the time of the injury in full view of the motorman at least four hundred feet away, at which distance he admits he saw the boys. It was apparent that one of the boys was right upon the track. The jury may have found from the testimony, and the court could not have disturbed that conclusion, that the motorman acted upon the assumption that the boys would get off the track, and though running at a speed of eight to ten miles per hour, made no effort to get his car under control or to stop it, until he saw the boy's foot was caught, when it was too late to do otherwise than run over him. The car, running with electric power, could have been controlled and taken well in hand so as to be readily stopped at the crossing.

This court in *Union Pacific Railroad Co.* v. *McDonald*, 152 U. S. 262, 277, quoted approvingly from Judge Cooley in a Michigan case: "Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly." This view is supported by other well considered cases. *Powers* v. *Harlow*, 53 Michigan, 507, 514; *Camden Interstate Railway Co.* v. *Broom*, 139 Fed. Rep. 595; *Forestal* v. *Milwaukee Electric Railway Co.*, 119 Wisconsin, 495; *Strutzel* v. *St. Paul City Railway Co.*, 47 Minnesota, 543; *Gray* v. *St. Paul City Railway Co.*, 87 Minnesota, 280.

This is not a case of a sudden and unexpected coming of children upon a track. The jury may have found that if the motorman had acted prudently in view of the signals and warnings to stop, which the testimony tends to show were given, and the full view he had of the boys at the time of the accident, checked the car and kept it under control, the injury might have been avoided.

We think, upon principle and authority, the court properly left to the jury to find whether the motorman exercised that reasonable care to avoid injury to the boy which the circum-

stances of the occasion required. And to have given an instruction as requested by the plaintiff in error, which limited the duty of the motorman to sounding an alarm in time for the boy to get off the track, and to act upon the presumption that he would do so until he found it was impossible for the plaintiff to remove his foot, would have been an unwarranted charge.

It is further urged that the court erred in instructing the jury upon the question of damages. Upon this point the court said:

"The jury are instructed that if they find a verdict for the plaintiff they should render a verdict in his favor for such a sum (not exceeding the amount claimed in the declaration) as in their judgment will reasonably compensate him for the pain resulting from the injury, and for the loss of his leg; for the inconvenience to which he has been put, and which he will be likely to be put, during the remainder of his life, in consequence of the loss of his leg; for the mental suffering, past and future, which the jury may find to be the natural and necessary consequence of the loss of his leg, and for such pecuniary loss as the direct result of the injury which the jury may find from the evidence that he is reasonably likely to sustain hereafter in consequence of his being deprived of one of his legs."

The court's attention was not called to any particular in which this charge which covers a number of elements of damages was alleged to be wrong, only a general exception was taken to the charge as given in this respect. It has been too frequently held to require the extended citation of cases that an exception of this general character will not cover specific objections, which in fairness to the court ought to have been called to its attention, in order that if necessary, it could correct or modify them. A number of the rules of damages laid down in this charge were unquestionably correct; to which no objection has been or could be successfully made. In such cases it is the duty of the objecting party to point out specifically the part of the instructions regarded as erroneous.

*Baltimore & Potomac Railway Co.* v. *Mackey,* 157 U. S. 72, 86.

It is now objected that to permit a recovery for a pecuniary loss as covered in the instructions would allow the infant plaintiff to recover compensation for his time before as well as after he has reached his majority, and that during infancy his father is entitled to recover any wages be might earn. If the defendant wished the charge modified in this respect he should have called the attention of the court directly to this feature. The charge in this respect was general, permitting a recovery for a pecuniary loss directly resulting from the injury. It would be very unfair to the trial court to keep such an objection in abeyance and urge it for the first time in an appellate tribunal.

Furthermore, an objection is taken to the charge as to mental suffering, past and future. It is objected that this instruction permits a recovery for future humiliation and embarrassment of mind and feelings because of the loss of the leg. But we find no objection to the charge as given in this respect. The court said: "The jury are to consider mental suffering, past and future, found to be the necessary consequence of the loss of his leg." Where such mental suffering is a direct and necessary consequence of the physical injury, we think the jury may consider it. It is not unlikely that the court might have given more ample instruction in this respect, had it been requested so to do. But what was said limited the compensation to the direct consequences of the physical injury.

An instruction of this character was sustained in *Washington & Georgetown Railroad Co.* v. *Harmon,* 147 U. S. 571, 584. That there might be more or less continuous mental suffering directly resulting from a maiming of the plaintiff's person in an injury of this character was probable, and where the jury was limited to that which necessarily resulted from the injury we think there can be no valid objection or just ground of complaint. Of a charge of this character, in *Kennon* v. *Gilmer,* 131 U. S. 22, 26, Mr. Justice Gray, speaking for this court, said:

"But the instruction given only authorized them, in assessing damages for the injury caused by the defendants to the plaintiff, to take into consideration 'his bodily and mental pain and suffering, both taken together' ('but not his mental pain alone'), and such as 'inevitably and necessarily resulted from the original injury.' The action is for an injury to the person of an intelligent being; and when the injury, whether caused by willfulness or by negligence, produces mental as well as bodily anguish and suffering, independently of any extraneous consideration or cause, it is impossible to exclude the mental suffering in estimating the extent of the personal injury for which compensation is to be awarded. The instruction was in accord with the opinions of this court in similar cases." We find no error in the charge in this respect.

As to the alleged error in charging the jury that damages could not be recovered in excess of the sum claimed in the declaration, the court was careful to say to the jury that the sum claimed should not be taken as a criterion to act upon, but that it was only a limit beyond which they could not go. We cannot see how the plaintiff in error was prejudiced by this instruction.

The judgment of the Court of Appeals is

*Affirmed.*