TATUM v. LOUISVILLE & N. R. CO.

(Circuit Court of Appeals, Fifth Circuit. October 29, 1918.)

No. 3263.

1. RAILROADS ⊚⇒305(2)—CROSSING ACCIDENTS—FRIGHTENING HORSE.

A petition setting up injuries when plaintiff's horse and buggy collided with defendant's train, which alleged defendant's flagman gave no warning until the horse was only a few feet from the tracks, when the flagman swung his flag directly before the animal, scaring it, etc., *held* to state a cause of action for negligence.

2. PLEADING ⊚⇒214(1)—DEMURRER—ADMISSIONS.

A demurrer, for the purpose of the demurrer, admits as true the allegations of the pleading attacked.

3. PLEADING ⊚⇒8(17)—CONCLUSIONS—NEGLIGENCE.

Negligence being the ultimate fact to be pleaded, and not mere conclusions of law, a declaration or petition charging defendant with an act

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

injurious to plaintiff, with a general allegation of negligence, etc., is sufficient, at least against general demurrer, without setting forth the details of acts causing injury, unless they could not be negligent under any circumstances.

4. NEGLIGENCE ⟨key⟩56(1)—PROXIMATE CAUSE.

It is only when causes are independent of each other that the nearest becomes the causa proxima.

5. NEGLIGENCE ⟨key⟩136(9)—ACTIONS—JURY QUESTION.

In cases of doubt as to the existence of negligence, where it seems possible for reasonable men to reach more than one conclusion, the better rule is to leave the question of negligence to the jury.

In Error to the District Court of the United States for the Northern District of Georgia; William T. Newman, Judge.

Action by W. P. Tatum against the Louisville & Nashville Railroad Company. There was a judgment sustaining a demurrer and dismissing the petition, and plaintiff brings error. Reversed and remanded, with directions.

Reuben R. Arnold, of Atlanta, Ga., for plaintiff in error.

John L. Tye and Henry C. Peeples, both of Atlanta, Ga., and D. W. Blair, of Marietta, Ga., for defendant in error.

Before WALKER and BATTS, Circuit Judges, and SHEPPARD, District Judge.

SHEPPARD, District Judge. This is an action for damages for personal injuries to the plaintiff in error, due to a collision of plaintiff's horse and vehicle with defendant's train at the Main street crossing of the defendant's railroad in the town of Cartersville, Ga. There was a demurrer to the first petition, which was sustained, with leave to amend, which was done; the amendment not differing very materially from the averments of the original petition, except that the allegation in the fifth paragraph of the first pleading that "the horse took fright at an automobile and began to run towards the railroad crossing, near which the watchman flaunted his red flag, which caused the horse to shy to the right, striking a large rock, in connection with the smoke of a passenger train," is auspiciously "stricken."

In the amended pleading no allusion is made to an automobile scaring the horse, nor, indeed, that the horse was frightened, nor that the horse "in its fright had gotten completely beyond control of plaintiff," nor that "connection with the smoke of a passenger train" had anything to do with the collision.

In the last paragraph of the amendment, the plaintiff attempts to lay aside the "weights that doth so easily beset," by striking all allegations in the original petition which are "inconsistent with this amendment." To this method of pleading, we note in passing, the defendant properly complains under one assignment of its demurrer.

The second pleading, which is styled "Amendment to Declaration," omitting for the sake of brevity and perspicuity the argument and evidence with which it bristles, states in substance that plaintiff was driving a horse attached to a buggy on Main street in the town of Cartersville, towards the railroad crossing on said street; that Main street

is straight for 250 yards in the direction from which plaintiff was approaching; that defendant maintained a watchman at said crossing, who had a clear view of the plaintiff the distance of 250 yards. One hundred and sixty feet from the crossing in the direction from which plaintiff was approaching was the intersection of Main and Public Square streets, the latter 90 to 100 feet wide. When plaintiff reached this street, the horse was going at a brisk trot, but under "perfect control," and could · have been checked up or easily turned into Public Square. While plaintiff was traversing the street the said distance of 250 yards, plaintiff was in full view of the crossing, which was clear. The watchman, who was standing near the crossing, had a clear view of plaintiff's horse and buggy coming in his direction for a distance of 250 yards. The customary warning to persons of the approach of trains or danger was to step to the center of the crossing and to wave a red flag. While plaintiff was driving down toward the crossing the distance before mentioned, the watchman, facing in his direction, stood with his stop signal "down by his side," which was notice, if not an invitation, to the plaintiff that the crossing was clear. At that time the train approaching the Main street grade crossing could have been seen by the watchman a quarter of a mile away. Plaintiff's view of the track in the direction from which the train was coming was obstructed by buildings and box cars, and by the exercise of ordinary care he could not have known of the approaching train. The train gave no signal of its approach, and, notwithstanding the watchman's opportunity to signal plaintiff when he was as far as the intersection of Public Square street 150 feet away, or to have given him timely warning, he permitted plaintiff to approach within 25 or 30 feet of the crossing, when suddenly he sprang in front of the horse, violently gesticulating and waving a "huge red flag," which frightened the horse and caused it to swerve to the right 20 to 30 feet, where the buggy struck a large boulder, when the horse swerved again to the left and sprang onto the track, where the buggy was demolished by the passing train, from which plaintiff sustained his injuries.

Plaintiff alleges as concurrent acts of negligence, in addition to the foregoing, defendant's failure to observe the blow-post law of Georgia, a violation of the speed ordinance of the town of Cartersville, and failure to keep a lookout on the engine of the train. In view of the conclusion reached upon the negligent acts here summarized, only brief notice later need be taken of the concurrent acts of negligence.

[1, 2] Defendant demurred to the petition as amended, specifying many grounds, which altogether amount to a general demurrer, to the effect that the amended pleading stated no cause of action. The court sustained the demurrer and dismissed the petition. and this order is assigned here as error. The question, then, presented upon this assignment, is: Does the amended declaration state a cause of action? Do the acts of negligence alleged in the amended pleading, which for the purpose of the demurrer are admitted to be true, raise a question of fact which entitles plaintiff to the intervention of a jury?

[3] There is no hard and fast rule for pleading negligence. The general rule is well stated in 29 Cyc. 570:

"A complaint or petition in an action for negligence must show negligence on the part of the defendant. * * * The rule sustained by the weight of authority is that, negligence being the ultimate fact to be pleaded, and not mere conclusions of law, a declaration or complaint charging defendant with an act injurious to plaintiff, with a general allegation of negligence in the performance of the act, is sufficient, at least against a general demurrer for want of facts, without stating details or particulars of the act causing the injury, unless the particular acts alleged are such that they could not be negligent under any possible state of facts or circumstances probable under the allegations of the complaint."

The instant declaration sets forth facts with unnecessary detail, but if the facts alleged are sufficient to make a prima facie showing of negligence against the railroad company, and unless the acts pleaded actually refute the charge of negligence, it is sufficient to warrant a submission of the facts to a jury to determine whether there was negligence. Then, if plaintiff has disclosed by his statement of the facts any acts or conduct on the part of the defendant's servants, showing negligence prima facie, it would seem, under the authorities, sufficient to withstand a general demurrer.

From a fair analysis of the amended declaration we find that the defendant company kept a watchman at the crossing in question to warn travelers of the approach of trains, and according to the declaration his sins and defaults were more serious because of the fact that they were more of commission than of omission. When we examine for the primary cause of the collision between the train and the horse and buggy, we are informed from the pleading that it was the frightened horse. What caused the horse to take fright? We ascertain likewise that it was the conduct of the watchman. In what respect? The frantic waving of the "red flag" before the horse's face.

It is a reasonable inference from the facts alleged that a horse under "perfect control," moving even at a brisk trot, could have been checked with the reins in the distance of 25 feet upon a timely signal to the driver. At least the averments of the amended petition would support a reasonable inference that the watchman failed to flag plaintiff, when he knew or ought to have known of the probable danger, when he saw plaintiff coming 150 feet away. According to the declaration, the watchman was, or should have been, cognizant of the approach of the train, and knew, or should have known, of the obstructions alleged to have obscured plaintiff's view of the track. The plaintiff, seeing the watchman at the crossing, could well have relied on him for warning, and the described attitude of the watchman while in clear view of the plaintiff's approaching vehicle may have been sufficient to have relieved plaintiff of the obligation to "stop, look, and listen."

A jury might conclude, from the facts disclosed by the declaration, that the demeanor of the watchman at his post of duty was an invitation to plaintiff to proceed with impunity to the point, at least, where the course of the horse was suddenly diverted, within 25 to 30 feet of the track. Even this distance away might have sufficed for stopping the horse, but what the watchman actually did, according to the story of the pleader, was extraordinary. After seeing the horse and buggy

come down the street for 250 yards, the watchman waited until the animal was within 25 to 30 feet of the crossing to make a demonstration of warning, which, if the allegations are true, was well calculated to excite the horse beyond control, and render defendant responsible for the natural consequences of such fright. The act of the horse swerving back in the direction of the track after contact with an obstruction could not be said to be beyond the reasonable and legitimate consequences of such a stop signal. Can it be said, from the acts alleged, that the conduct of the watchman, under the circumstances, was that of a reasonably prudent person? If not, then the question whether there was negligence was one of fact, properly to be submitted to a jury.

[4] The swerving back of the horse onto the track by impact of the buggy with the boulder, after its direction was diverted, was a condition subsequent to the cause. It may be that the watchman's act produced the fright which necessarily set the cause of the collision in operation. It is only when the causes are independent of each other that the nearest becomes the causa proxima. Milwaukee, etc., R. Co. v. Kellog, 94 U. S. 469, 24 L. Ed. 256; Insurance Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395.

[5] Whether the conduct of the watchman, under the circumstances of the case, was that of a reasonably prudent man, in the exercise of ordinary care, we think was not a question of law, but of fact. We cannot say that a jury of reasonable men could reach but one conclusion upon the facts of this case. Even in cases of doubt as to the existence of negligence, the better rule, it seems, is to leave the question of negligence to a jury to determine. Richmond v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, 37 L. Ed. 642; McDermott v. Severe, 202 U. S. 600, 26 Sup. Ct. 709, 50 L. Ed. 1162.

Without adverting to the concurrent causes of negligence alleged, since the case must be sent back, further than to say that negligence predicated on the violation of statutes and ordinances is generally facts for the jury (Grand Trunk v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485), we conclude that there are sufficient acts of negligence charged against the watchman to have warranted the submission of the facts to a jury.

If the defendant should apprehend embarrassment in the preparation of its defense, as indicated by the demurrer, by inconsistent allegations of the complaint or other matters not of substance, it is enough to say that special demurrers are available under the Georgia practice, by which the vice, if any, may be corrected in the trial forum.

The judgment below is reversed and remanded for further proceedings not inconsistent with this opinion. It will be so ordered.