MRS. NADINE L. KELLY, ADMINISTRATRIX OF KEARNS LITTLE KELLY, v. J. C. HUNSUCKER AND DEWEY COOK.

(Filed 27 January, 1937.)

1. **Automobiles § 12c—Instruction that speed limit upon bridge was ten miles per hour held without error in cause arising prior to effective date of ch. 311, Public Laws of 1935.**

   Chapter 140, sec. 15, Public Laws of 1917, providing a speed limit of 10 miles per hour in traversing a bridge, is not repealed by sec. 4, ch. 148, Public Laws of 1927, since the latter act does not purport to cover the whole field of speed regulation upon the State highways, and the provisions of the former act are not repugnant to those of the latter act, nor are the provisions of the Act of 1917 repealed by sec. 2, ch. 235, Public Laws of 1931, since this section is not inconsistent with the ten-mile limit, and in an action to recover for the death of plaintiff's intestate who was struck by a truck just after it had traversed a bridge entering an incorporated town, an instruction that the speed limit on the bridge was ten miles per hour, and that speed in excess of that limit constituted negligence *per se*, *is held* without error.

2. **Statutes § 10—**

   Repeals by implication are not favored, and two acts relating to the same subject matter must be irreconcilable in order for the later to repeal the former.

3. **Automobiles § 18h: Appeal and Error § 39g—Alleged error in the charge held not prejudicial under the facts of this case.**

   Where the court correctly charges that under the statutory provision applicable the legal speed limit at the *locus in quo* was ten miles per hour, error in the instructions in applying another provision of the statute limiting the speed to fifteen miles per hour approaching an intersection cannot be held for prejudicial error on defendant's appeal.

4. **Automobiles § 18g—Evidence of negligence in traveling at excessive speed and failing to keep proper lookout held sufficient for jury.**

   Evidence that defendant drove his truck over a bridge entering an incorporated town at a speed in excess of that allowed by the applicable statute, and struck and killed plaintiff's intestate, a four-year-old boy, as

he was crossing an intersection made by a street entering, but not cross-
ing, the highway immediately beyond the bridge, that defendant's view
was unobstructed and that he could have seen intestate had he been
keeping a proper lookout, and could have avoided the accident by turning
a few feet to the left, with evidence raising a reasonable inference that
defendant must have been looking at smoke boiling over the side of the
bridge from a train passing under the bridge, and did not see intestate
until upon him, when, because of excessive speed, he did not have time to
turn to the left, but struck intestate about two and a half feet from the
right side of the highway, although the whole of the eighteen-foot high-
way was open, *is held* sufficient to be submitted to the jury on the issues
of negligence and proximate cause.

**5. Negligence § 12—**

A four-year-old boy is conclusively presumed to be incapable of negli-
gence, primary or contributory.

Appeal by defendants from *Harding, J.*, and a jury, at March 30
Term, 1936, of Mecklenburg. No error.

This is an action for actionable negligence brought by plaintiff
against defendants for damages.

Facts: Plaintiff's intestate, a four and one-half year old child, was
struck down and killed by a truck driven by the defendant Dewey Cook,
the employee of the defendant J. C. Hunsucker, at a street intersection
in the residential district of the village of Mt. Gilead, North Carolina,
on 25 July, 1933, about 1:00 p. m. in the afternoon. Dewey Cook and
two other men were riding in the truck together. The middle man had
a sandwich in a bag in his lap, eating his dinner. The point where
plaintiff's intestate was struck is at the eastern end of a bridge, whereby
the principal street of the town of Mt. Gilead (which is also a State
highway) crosses over a deep railroad fill; the intersecting side street
runs parallel to the railroad, south of the main street or highway, and
joins but does not cross the main street at the east end of this bridge.
The child started across the main street at this intersection, going from
south to north, and was struck when about two and a half feet onto the
highway. The bridge includes a regulation 18-foot highway, with side-
walks of 4½ feet on each side, and beyond this is a solid rail or parapet
about 3½ feet high. The road is straight and level on both approaches
to the bridge for several hundred yards, and the defendant was traveling
in an easterly direction approaching the town of Mt. Gilead. A train
was passing under the bridge at the same time that the defendant's truck
was passing over the bridge, and train smoke was boiling up over the
edge of the parapet.

Plaintiff's witness H. O. Holderfield testified that the truck entered
the bridge traveling at from 35 to 40 miles an hour and that it did not
stop until it had gone some 75 feet from where the child was lying. The

child was lying in the road where he was struck two feet from the south edge of the pavement, six to eight feet from the east end of the bridge. The evidence was to the effect that the truck did not turn out of its course to the left as it had room to do before it struck the child. The evidence was also to the effect that the child was in plain view of anyone coming up the highway for several hundred yards from the time he stepped out of the side road and passed the parapet of the bridge until he reached the place where he was struck.

The issues submitted to the jury and the answers thereto were as follows:

"(1) Was the plaintiff's intestate killed by the negligence of the defendants? Answer: 'Yes.'

"(2) Did the plaintiff's intestate by his own negligence contribute to his injury, as alleged in the answer? Answer: 'No.'

"(3) What damage, if any, is plaintiff entitled to recover? Answer: '$3,699.'"

The court below rendered judgment on the verdict. Defendants made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones will be considered in the opinion.

*Pharr & Bell for plaintiff.*
*John M. Robinson and Hunter M. Jones for defendants.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence, the defendants in the court below made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions, and in this we can see no error.

The defendants contend that it was error in the court below to charge that the speed limit on the bridge was ten miles per hour. We cannot so hold. This charge was bottomed on ch. 140, part of sec. 15 of the Public Laws of 1917 (part N. C. Code, 1935 [Michie], sec. 2616), as follows: "Upon approaching an intersecting highway, a bridge, dam, sharp curve, or deep descent, and also in traversing such intersecting highway, *bridge,* dam, curve, or descent, a person operating a motor vehicle shall have it under control and operate it at such speed, *not to exceed ten miles an hour,* having regard to the traffic then on such highway and the safety of the public." (Italics ours.)

Public Laws of 1927, chap. 148, is an act known as the Uniform Act Regulating the Operation of Vehicles on Highways. We quote in part: "Sec. 4—Restrictions as to Speed. (a) Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface, and width of the highway, and of any other conditions then ex-

isting, and no person shall drive any vehicle upon a highway at such a speed as to endanger the life, limb, or property of any person and in no event at a rate of speed greater than forty-five miles per hour.

"3. Fifteen miles an hour when approaching within fifty feet and in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any one time during the last one hundred feet of his approach to such intersection he does not have a clear and uninterrupteed view of such intersection and of the traffic upon all the highways entering such intersection for a distance of two hundred feet from such intersection."

Section 66 of the act says: "All laws or clauses of laws in conflict with this act are hereby repealed."

It is well settled that repeals by implication are not favored, and the repugnancy between the later and the former act must be wholly irreconcilable in order to work a repeal of the former. In *S. v. Foster,* 185 N. C., 674 (677), speaking to the subject: "In Black on Interpretation of Laws, 579, p. 351, it is said, 'Repeals by implication are not favored. A statute will not be construed as repealing prior acts on the same subject (in the absence of express words to that effect) unless there is an irreconcilable repugnancy between them, or unless the new law is evidently intended to supersede all prior acts on the matter in hand and to comprise in itself the sole and complete system of legislation on that subject.' "

Public Laws of 1927, chap. 148, did not intend to cover the whole subject; on the contrary, it says that only all laws or clauses of laws in conflict with the act are repealed.

Public Laws of 1931, chap. 235, sec. 2, reads as follows: ". . . The State Highway Commission, or other governmental agency having control over any bridge constituting a part of the highways of the State, may, by suitable signs or markers at each end of such bridge, post the safe speed and carrying capacity for such bridge, and no motor vehicle or trailer shall be operated over such bridge at a greater speed or with a total gross weight of vehicle and load greater than posted speed . or carrying capacity."

Section 3 is as follows: "All laws or parts of laws inconsistent with the provisions of this act be and the same are hereby repealed." This section is not inconsistent with the ten-mile limit.

N. C. Code, 1935 (Michie), sec. 2598 (1917, chap. 140, sec. 1), in part defines a public road as follows: "The term 'public highway' or 'highways' shall be construed to mean any public highway, township, county, or State road, or any country road, any public street, alley, park, parkway, drive, or public place in any city, village, or town. The term and words 'business portion of any city or village' shall be construed to

mean the territory of a city or incorporated village contiguous to a public highway which is at that point either wholly or partially built up with structures devoted to business."

Chapter 311 of the 1935 Public Laws of North Carolina is in part as follows: "Sec. 1 (n). Street or Highway. The entire width between property lines of every way or place of whatever nature, when any part thereof is open to the use of the public as a matter of right for the purposes of vehicular traffic."

"Sec. 2. Amend article two of said act (Public Laws of 1927, chap. 148) by striking out sec. four, and substitute in lieu thereof new section four as follows: Sec. 4. Speed Restrictions. (a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing.

"(b) Where no special hazard exists the following speeds shall be lawful, but any speed in excess of said limits shall be *prima facie* evidence that the speed is not reasonable or prudent and that it is unlawful:

"1. Twenty miles per hour in any business district.

"2. Twenty-five miles per hour for motor vehicle designed, equipped for, or engaged in transporting property; and thirty miles per hour for such motor vehicle to which a trailer is attached.

"4. Forty-five miles per hour under other conditions.

"(c) The fact that the speed of a vehicle is lower than the foregoing *prima facie* limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements, and the duty of all persons to use due care," etc.

Section 6 is as follows: "That all laws and clauses of laws in conflict with the provisions of this act are hereby modified so as to conform to this act."

The killing of plaintiff's intestate took place on 25 July, 1933, before the above laws of 1935 were enacted.

Public-Local Laws of 1927, chap. 148, sec. 4, par. 3, is as follows: "Fifteen miles an hour when approaching within fifty feet and in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any one time during the last one hundred feet of his approach to such intersection he does not have a clear and uninterrupted view of such intersection and of the traffic upon all the highways entering such intersection for a dis-

tance of two hundred feet from such intersection." This changed chap. 272, Public Laws of 1925 (D), which reads as follows: "(D) Fifteen miles per hour in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last one hundred feet of his approach to such intersection he does not have a clear and uninterrupted view upon all of the highways entering such intersection for a distance of two hundred feet from such intersection."

The court below charged the jury as follows: "The court charges you under the law of this State, when a person driving a motor vehicle approaches a bridge it is his duty under the law to slow down to ten miles an hour.

"That when he approached an intersecting road where two roads come together and go on, both follow the same road, that is an intersection; it does not mean one road coming up the highway and following the highway; that is not an intersection under this statute. Upon approaching an intersection it is the duty of the driver to slow down to 15 miles an hour, if at any point within 100 feet from the intersection."

There was evidence to the effect that the intersection between the highway and the side road which entered the highway at the end of the bridge was obstructed within the terms of said statute. The charge as set forth was not in accordance with the statute. The plaintiff in her brief says: "It is frankly admitted that this instruction was not sufficiently clear for the jury to ascertain that the court intended to limit it to intersections where the driver's view is obstructed." We do not think it reversible or prejudicial error, as the law of the road only allowed defendants to travel 10 miles an hour when crossing the bridge. This charge, if correct, allowed them to travel faster, which was favorable to defendants.

On the aspect of nonsuit, which cannot be sustained, we may say: A careful reading of the record in this case shows that defendant Dewey Cook was driving down the highway at an excessive rate of speed and without keeping a proper lookout. It is a reasonable inference that he was watching the train. The evidence was that the train smoke was boiling over the edge of the bridge and the train was passing under the bridge at the same instant that the truck was crossing it. The noise and smoke, no doubt, attracted Dewey Cook's attention away from the road, and he did not see the child until he was right on him and it was too late either to stop the truck or to turn it out of the child's path. He had the entire width of an 18-foot highway within which to dodge the child, if he had been keeping a proper lookout. It is a reasonable inference that the child was within their vision for at least thirty or forty yards because an automobile going forty miles an hour would travel at least

that distance while a four and a half year old child was traveling seven or eight feet. All this was a matter for the jury to determine. The violation of the rule of the road was negligence *per se,* and if the proximate cause of the injury, defendants were liable for negligence. All this was left to the jury under proper instructions by the court below.

In *Goss v. Williams,* 196 N. C., 213 (221-2), this Court sustained Judge Sinclair's charge as follows: "You are instructed that even though the injured party through his own negligence placed himself in a position of peril, he may recover if the one who injured him discovers, or by the exercise of ordinary care, could have discovered him in time to have avoided the injury. The defendant would not be relieved of liability by reason of the fact that he did not see him, but the law holds him to the responsibility of seeing what he could have seen by keeping a reasonably vigilant and proper lookout. You are instructed that the mere fact that a child runs in front of a moving motor vehicle so suddenly that the driver had no notice of danger, does not necessarily relieve a defendant from liability. There still remains the question whether the negligent driving of the automobile made it impossible for the driver to avoid the accident after seeing the child, or when by the exercise of reasonable care, such driver could have seen the child in time to avoid the injury, there being a greater degree of watchfulness and care required of automobile drivers as to children than adults."

In that case the defendant tendered no issue as to contributory negligence, although the minor was between seven and eight years old. In this case the child was four and a half years old. *Moore v. Powell,* 205 N. C., 636.

*Varser, J.,* speaking for the Court in a well-considered opinion in *Campbell v. Laundry,* 190 N. C., 649 (651-2), citing a wealth of authorities, says: "There must, of necessity, be a period within which a child is incapable of exercising care to such a degree as may be otherwise legally applicable to the given situation. We are of the opinion that a child four years old is incapable of negligence, primary or contributory. . . . This ruling is in accord with the decisions throughout the country, as indicated by the following: *McDermott v. Severe,* 202 U. S., 600. In this case the Court affirmed the judgment for plaintiff, a boy six years and 10 months old. The trial court instructed the jury that, since plaintiff was under seven years of age, contributory negligence could not be attributed to him."

In *Bevan v. Carter,* 210 N. C., 291 (292), *Stacy, C. J.,* for the Court, said: "Was it proper to submit to the jury the contributory negligence of the plaintiff? The answer is, 'No.'

"It was said in *Campbell v. Laundry,* 190 N. C., 649, 130 S. E., 638, 'A child four years old is incapable of negligence, primary or con-

tributory.' Furthermore, there is no plea of contributory negligence. C. S., 523. Nor would such a plea avail as against a four-year-old plaintiff. *Jordan v. Asheville*, 112 N. C., 743, 16 S. E., 760." *Boykin v. R. R., ante*, 113 (115).

We have cited many statutes in reference to the law of the road and attempted to bring some of them up-to-date. We see no prejudicial or reversible error in any of the defendants' exceptions and assignments of error.

For the reasons given, we find

No error.