BRUCE RANDALL ARNETT, by his Next Friend, MRS. ARTHUR ARNETT, JR., v. JOE YEAGO and LORRAINE YEAGO.

(Filed 11 December, 1957)

1. **Automobiles § 42l: Negligence § 12—**

   A three-year old child is incapable of negligence, primary or contributory.

2. **Automobiles § 9—**

   The leaving of a motor vehicle on a highway unattended without first setting the hand brake and turning the front wheels toward the curb or side of the highway is negligence *per se,* and is actionable if the proximate cause of injury.

3. **Automobiles § 6—**

   Unless the statute itself provides to the contrary, the violation of a motor vehicle traffic regulation is negligence *per se,* and the statute itself prescribes the standard so that the common law rule of ordinary care does not apply.

4. **Automobiles § 34—**

   A person must recognize that children, and particularly very young children, have less judgment and capacity to avoid danger than adults, and that children near a highway are entitled to a care in proportion to their incapacity to foresee and avoid peril.

5. **Automobiles § 41q—Evidence that defendant left car unattended without setting brakes so that it was put in motion by a young child held to take issue of negligence to jury.**

   Plaintiff's evidence tending to show that defendant left her automobile unattended headed downhill upon a street in a thickly populated

neighborhood with knowledge that a number of young children were about, that defendant left the left front door of the car open, failed to set the hand brake or turn the front wheels toward the curb, and left the gear shift in reverse but that the gear shift could be moved out of reverse by touching it, and that a three-year old child climbed in the car, and thereafter the car started moving downhill, struck several trees, resulting in injury to the child, *is held* suffic ent to be submitted to the jury on the issue of defendant driver's negligence, since the parking of the vehicle in such manner is negligence *per se*, and a reasonably prudent person in the exercise of ordinary care could or should have reasonably foreseen that a child might get into the car, put it in motion, and that consequences of a generally injurious nature might be expected.

**6. Negligence § 9—**

It is not necessary that injury in the precise form that occurred should have been foreseen.

**7. Negligence § 5—**

The determination of the issue of proximate cause requires the drawing of inferences sometimes from disputed and sometimes from uncontroverted facts, and is peculiarly the province of the jury.

JOHNSON, J., dissents.

APPEAL by defendants from *Nimocks, J.,* June Civil Term 1957, of CUMBERLAND.

Civil action to recover damages for injuries to a three-year-old boy.

Upon issues submitted to them, the jury found that this boy was injured by the actionable negligence of the defendants, and awarded damages in the amount of $5,000.00.

From judgment on the verdict, the defendants appeal.

*James R. Nance for Defendants, Appellants.*
*N. H. McGeachy, Jr., for Plaintiff, Appellee.*

PARKER, J. The defendants have two assignments of error. The first is to the denial of their motion for judgment of nonsuit made at the close of plaintiff's evidence. The defendants offered no evidence. The second is formal: failure to set aside the verdict as being contrary to the law and the evidence, and the entry of the judgment.

The defendants are husband and wife. At the time in question the husband owned a 1951 Pontiac four-door sedan. Prior to the introduction of evidence, the defendants stipulated "into the record judicially" that on 22 June 1955 Mrs. Lorraine Yeago, as a member of Joe Yeago's household, operated this automobile "under what is known in North Carolina as the family car doctrine, and that as to the responsibility of her husband for its

operation at the time in question, if she is liable, then he, the owner thereof, is likewise responsible under this doctrine."

Mrs. Arthur Arnett, Jr. is the mother of Bruce Randall Arnett, who, on 22 June 1955, was living with his mother, and was three years old. On this date she lived at 1918 Cherokee Drive in the city of Fayetteville. Her home was situate on the north side of the street. Cherokee Drive is a wide paved street running east and west, and goes downhill east from the Arnett home to Mohawk Avenue, with a decline of about five feet for every one hundred feet of distance. Mrs. Arnett testified that Cherokee Drive goes "downhill, with a drop of about 15 feet from the west side of my yard to where the car was stopped." Cherokee Drive has curbing on the north and south sides. Mrs. Arnett thus described the curbing: "It is a little concrete dip. Instead of going up from the black part of the pavement, it goes down a little more, and then slopes up." Another witness, Mrs. Horace L. Whitley, gave this description: "It is not such a curb as we have in front of the Courthouse; it is rounded up to it. . . . Automobiles roll and drive right across that, but it bumps because we go across one in our driveway. It is not such a curb as needed to be cut away to make the driveway, it is just a little decline and an incline up to the yard and the incline up to the yard is only a matter of inches."

On this date there were seven houses on the north side of Cherokee Drive, and six on the south side. About fifteen young children lived in the neighborhood. Mrs. Lorraine Yeago and Mrs. Arthur Arnett, Jr., were friends, and Mrs. Yeago visited Mrs. Arnett in her home about twice a week. The defendants admitted in their answer that this was a thickly settled residential area, and that on this day, when Mrs. Yeago parked her automobile in front of the Arnett home, she saw Bruce Randall Arnett about his yard.

About 4:00 p.m. on 22 June 1955 Mrs. Lorraine Yeago drove this 1951 Pontiac automobile to the Arnett home, and parked it next to this home on the north side of Cherokee Drive, headed east and downhill. When Mrs. Yeago drove up, Mrs. Arnett with Bruce and a younger son, Barry, and her eight-year-old niece, Shelia Susan Lott, were in a back yard across the street from her home. Mrs. Yeago and her daughter, Cathy, went to where Mrs. Arnett and the children were. In about twenty or thirty minutes all five of them went across the street to the Arnett premises. Cathy was crying to go home. Mrs. Arnett, Mrs. Yeago and Cathy went into the house, so that Mrs. Arnett could give Cathy a piece of cake she had baked. Bruce, Barry and Shelia Susan Lott were left outdoors.

This is the substance of Shelia Susan Lott's testimony: The car was headed downhill, and the left front door was open. She saw the car door was open as she came across the street from the back yard. Neither Bruce, nor Cathy, opened the door. Bruce couldn't reach the door and open it. He was little at that time, but he could climb up in an automobile, and he could climb up on a seat. The left front door was open, and Bruce was on the left side in the front seat. She saw Bruce playing with the gear shift. He had a hand on the gears. She saw him messing with the gear shift, and the car started rolling. The car did not start rolling until Bruce started fooling with it. She did not see Bruce get in the car. The car rolled three or four car lengths straight down the road, and then turned to the left, went across a yard, and a tree slapped the door on Bruce's hand. He started screaming, and then the car hit another tree, and stopped. At the time Shelia Susan Lott was eight years old.

When Mrs. Arnett had been in her house a minute or two, she went to the front door to look for the children outside. She saw the Yeago car moving straight down the hill. The left front door was open. Bruce was sitting under the steering wheel, with his feet hanging out the door. She started running after the car. It went straight down the street three or four car lengths and then turned into Mrs. Horace L. Whitley's yard, which is on the same side of Cherokee Drive as the Arnett home. The left front door hit a tree in the Whitley yard, which closed it on Bruce's hand. Bruce started screaming and crying. The car went on until the bumper hit another tree, which stopped it. Mrs. Arnett reached the car, and opened the door. Blood was pouring from Bruce's hand, and he was screaming and crying. He was immediately carried to a doctor, and then to Highsmith Hospital.

Mrs. Arnett testified as follows: "Mrs. Yeago told me that she left the brake off the car; that she wished she had pulled it up but she put the gear shift in reverse; that the brake was hard to pull up and that was easier to do. She was referring to the emergency brake, and Mrs. Yeago has told me that on two or three occasions."

The brakes on this 1951 Pontiac car are not locked in any gear except reverse. It will move in any other gear. The gear shift in reverse can be moved out of reverse by touching it with a finger. This car had an emergency brake, which can be pulled up, and let down.

Bruce had two operations on his left hand. Over half of his index finger had to be amputated. He has some permanent disability to digit No. 3. Bruce is left-handed. His left hand is his dominant hand, and Dr. John W. Balus, who was Bruce's doctor, testified his left hand will probably stay that way, and the in-

juries to his left hand will permanently effect the left hand and its use. Bruce was in the hospital from 22 June 1955 until 2 July 1955. He suffered pain from his injury. His hospital, medical and drug expenses amounted to $504.00.

Bruce Randall Arnett, a three-year-old child, was incapable of negligence, primary or contributory. *Campbell v. Laundry,* 190 N.C. 649, 130 S.E. 638; *Bevan v. Carter,* 210 N.C. 291, 186 S.E. 321; *Kelly v. Hunsucker,* 211 N.C. 153, 189 S.E. 664; *Reid v. Coach Co.,* 215 N.C. 469, 2 S.E. 2d 578.

G.S. 20-163 provides: "No person having control or charge of a motor vehicle shall allow such vehicle to stand on any highway unattended without first effectively setting the brakes thereon and stopping the motor of said vehicle, and, when standing upon any grade, without turning the front wheels of such vehicle to the curb or side of the highway."

G.S. 20-124 (b) reads: "No person having control or charge of a motor vehicle shall allow such vehicle to stand on any highway unattended without first effectively setting the hand brake thereon, stopping the motor and turning the front wheels into the curb or side of the highway."

A violation of the above two statutes is negligence *per se,* but such violation must be a proximate cause of the injury to be actionable. *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246.

This Court said in *Aldridge v. Hasty,* 240 N.C. 353, 82 S.E. 2d 331: ". . . when the plaintiff relies on the violation of a motor vehicle traffic regulation as the basis of his action that, unless otherwise provided in the statute, the common law rule of ordinary care does not apply. The statute prescribes the standard, and the standard fixed by the Legislature is absolute. 38 A.J. 831, Sec. 160. Proof of the breach of the statute is proof of negligence."

Mrs. Yeago allowed this 1951 Pontiac four-door sedan to stand on Cherokee Drive in front of the Arnett home unattended without first effectively setting the brakes thereon, and without first effectively setting the hand brake thereon, which was a violation of G.S. 20-163 and G.S. 20-124 (b), and negligence *per se* on her part.

When Mrs. Yeago parked this automobile in front of the Arnett home, and left it unattended, the automobile was headed east and downhill. When this automobile started downhill with Bruce Randall Arnett in the front seat sitting under the steering wheel with his feet hanging out of the open left-hand front door, it went straight down Cherokee Drive three or four car lengths before it turned to the left into Mrs. Horace L. Whitley's yard. These facts permit the reasonable inference that Mrs.

Yeago, when she parked this automobile, did not turn its front wheels to the curb or side of Cherokee Drive, or did not turn its front wheels into the curb or side of Cherokee Drive, in violation of G.S. 20-163 and G.S. 20-124(b), which is negligence *per se.* *Hatch v. Globe Laundry Co.*, 132 Me. 379, 171 A. 387. See *Campbell v. Laundry, supra,* pp. 650-651 in our Reports, and p. 638 in the S.E. Reporter.

In *Campbell v. Laundry, supra,* this Court said: "A child of this tender age (4 years old) merely indulges the natural instincts of a child and amuses himself with an empty cart, a deserted horse, an automobile or an electric truck, or whatever may be in his sight." And further on in the opinion it is said: "Authorities might be extended, but we deduce the rule to be that one is held responsible for all the consequences of his acts which are natural and probable and ought to have been foreseen by a reasonably prudent man, and if one wrongfully leaves upon a public street, in a populous city, a large electric delivery truck, with the 'plug' in its place, and the brakes loose and not set, which he, as a reasonable man, ought to have foreseen, in the exercise of ordinary care, would likely be disturbed by heedless children, then he is liable for an injury resulting from such negligence. *Lane v. Atlantic Works,* 111 Mass., 136; *Union Pac. v. McDonald,* 152 U.S. 262; *Stark v. Holtzclaw,* 105 Sou., 330 (Florida)."

A person must recognize that children, and particularly very young children, have less judgment and capacity to avoid danger than adults, and that children near a highway are entitled to a care in proportion to their incapacity to foresee and avoid peril. *Pavone v. Merion,* 242 N.C. 594, 89 S.E. 2d 108; *Greene v. Board of Education,* 237 N.C. 336, 75 S.E. 2d 129; *Hughes v. Thayer,* 229 N.C. 773, 51 S.E. 2d 488.

In *Hatch v. Globe Laundry Co., supra,* the Supreme Judicial Court of Maine held that whether the negligence of driver of electric truck in parking it on left side of street headed downhill, without turning front wheels toward curb, or removing key to prevent power from passing to motor, was proximate cause of injury to one attempting to stop truck after small boys started it, was an issue of fact to be decided.

In *Block v. Pascucci,* 111 Conn. 58, 149 A. 210, the evidence showed the following: The defendant Luigi Pascucci left an automobile of his wife standing on Barbour Street, in Hartford, at a point nearly opposite the plaintiff's store, and went into the apartment of a Mrs. Trembley. While he was absent, a child of Mrs. Trembley, about three years old, was observed in a bending position in front of the car, and soon thereafter the car backed across the street and crashed through a plate-glass window into plaintiff's store, with disastrous consequences to his merchan-

dise therein. The child was seen to leave the automobile an instant before it struck the window. Barbour Street is practically level at the point in question. The Court said: "The trial court found that Pascucci, being in a hurry, left the car unattended and unoccupied, with the engine running, and without setting any brakes so as to prevent the car from moving or being moved, or locking it in any way, and that the child could not have manipulated the brakes, but may have interfered with some of the mechanism. . . . Upon this finding, the conclusion of negligence was warranted. The appellant claims, further, that, even if the defendants be held negligent, such negligence was not the proximate cause of the plaintiff's damage. It is too clear to require discussion that negligence of the defendant driver in leaving the automobile unattended, with motor running, unbraked and unlocked, on a business street, was 'a substantial factor in producing the damage complained of,' notwithstanding possible intervention of an innocent act of the small child, which would have been prevented by reasonable care and precautions by the defendant driver. Such negligence, therefore, might reasonably be held a proximate cause of the incursion of the automobile into the plaintiff's store and of the resulting damages."

The jury could reasonably and legitimately draw these inferences from the evidence: (1) Mrs. Yeago was guilty of negligence *per se* in allowing the Pontiac four-door sedan automobile to stand unattended upon a grade on Cherokee Drive in front of the Arnett home, and headed downhill, without first effectively setting the hand brake on the automobile, and without turning its front wheels to the curb or side of the highway; (2) that she put the gear shift in reverse to brake the automobile, because that was easier to do, but the gear shift in reverse can be moved out of reverse by touching it with a finger; (3) that she left the left front door of the automobile next to the steering wheel open; (4) that she frequently visited Mrs. Arnett, and knew that it was a thickly settled residential area with a number of young children living in the neighborhood; (5) that when she went in the Arnett home with Mrs. Arnett and her daughter Cathy, she knew Bruce Randall Arnett, his younger brother Barry, and the eight-year-old girl Shelia Susan Lott were outside in the Arnett yard; (6) that she could, and should, have reasonably foreseen as a reasonably prudent person in the exercise of ordinary care that a young and heedless child would likely get into the automobile with its left front door open next to the steering wheel, and under the circumstances in which she left the automobile unattended, would put this automobile in motion, and, as it was headed downhill, it would roll down the grade of Cherokee Drive, and that from such movement of the automobile downhill conse-

quences of a generally injurious nature might be expected; and (7) that such negligence on Mrs. Yeago's part might reasonably be held a proximate cause of Bruce Randall Arnett's injuries. It is not necessary that injury in the precise form that it occurred should have been foreseen. The determination of the issue of proximate cause requires the drawing of inferences sometimes from disputed, and sometimes from uncontroverted, facts, and is peculiarly the province of the jury. The trial judge properly left to the decision of the jury the question of the actionable negligence of the defendants. *Campbell v. Laundry, supra,* and cases there cited; *Block v. Pascucci, supra; Hatch v. Globe Laundry Co., supra.* See *Tierney v. New York Dugan Bros.*, 288 N.Y. 16, 41 N.E. 2d 161, 140 A.L.R. 534; and Anno. 51 A.L.R. 2d, pp. 659-662.

The defendants during the trial stipulated that if Mrs. Yeago is liable in damages to Bruce Randall Arnett, then Mr. Yeago, her husband, as the owner of the automobile was also liable under the family purpose car doctrine, which is well settled law in North Carolina. *Elliott v. Killian*, 242 N.C. 471, 87 S.E. 2d 903.

In the trial below we find
No error.

JOHNSON, J., dissents.