HARVEY W. MATTINGLY v. NORTH CAROLINA RAILROAD COMPANY AND SOUTHERN RAILWAY COMPANY.

(Filed 20 January, 1961.)

**1. Trial § 22a—**

On motion to nonsuit, the evidence is to be viewed in the light most favorable to the plaintiff, giving to him the benefit of every reasonable inference to be drawn therefrom, and assuming to be true all the facts in evidence tending to support his cause of action.

**2. Negligence § 24a—**

In order to establish actionable negligence, plaintiff must show a failure to exercise proper care in the performance of some legal duty which defendant owed plaintiff under the circumstances, and that such negligent breach of duty was the proximate cause of injury, which is that cause which produces the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed.

**3. Automobiles § 7—**

It is the duty of a motorist to exercise ordinary care for his own safety, which includes the duty to keep his vehicle under control and to keep a reasonably careful lookout in the direction of travel, and he is held to the duty of seeing what he ought to have seen.

**4. Railroads § 4—**

Evidence tending to show that plaintiff, in attempting to traverse a grade crossing, "misjudged the turn", ran off the asphalt surface, so that his wheels became lodged in the soft gravel around the tracks, without evidence of defect in the crossing itself, discloses contributory negligence barring recovery as a matter of law for damage to the vehicle resulting when it was hit by a train some twenty minutes after becoming stuck.

**5. Same— Evidence held insufficient to invoke the doctrine of last clear chance.**

Evidence tending to show that plaintiff's car was stuck in the soft gravel adjacent to a railroad crossing, that the car's lights were shining away from the track, that a person ran toward the approaching train swinging a flashlight in an arc in front of his body, but that the light could be seen only when the beam was directed toward the viewer, *is held* insufficient to invoke the doctrine of last clear chance in an action to recover damages resulting to the car when struck by the train, since the situation is governed by how it appeared to the engineer, and the evidence does not disclose that he knew, or by the exercise of due care should have known, that plaintiff's automobile was stranded in a position of peril in time to have avoided the collision.

**6. Negligence § 10—**

The doctrine of last clear chance does not apply unless it is shown that plaintiff was in a helpless condition, that defendant saw, or in

the exercise of due care could have seen him and appreciated the danger in time to have avoided the injury, and that the failure to exercise such care to avoid the injury was one of the proximate causes thereof.

APPEAL by defendants from *Campbell, J.,* at April 25, 1960, Regular Civil Schedule B Term, of MECKLENBURG.

Civil action to recover damages to an automobile sustained in a collision with a train of the defendants at a crossing in the unincorporated town of Newell, North Carolina, some time after midnight on 22 November 1958.

The crossing consisted of a north-bound track and a south-bound track set down in asphalt so that the rails are flush with the road level. Coming from west to east, the cross-over road rises about 3 feet in a distance of approximately 20 feet in the approach from the west, and declines about 5 feet within a distance of approximately 15 feet in the approach from the east. The crossing is level for about 25 feet between the place on the west where the road rises and crosses over to the place on the east where it does the same thing. The unnamed road crossing the tracks was approximately 15 feet wide at the crossing, and comes to a dead end about two blocks from the extension of the Chinch Road. On the west side of the tracks and of the Concord Road there is one residence directly opposite the crossing, and then a filling station approximately fifty yards north. South of the crossing on the west side there is nothing but the tracks. There is nothing between the tracks and the old Concord Road except Western Union cable lines and telephone lines.

The plaintiff proceeded across the westernmost tracks in an easterly direction, and upon crossing the easternmost tracks he "misjudged the turn" and his car became lodged in the soft gravel off the asphalt. The front of the plaintiff's automobile came to rest in a southeasterly direction or away from the tracks; the head lights were on and likewise shining away from the tracks. The right rear wheel of plaintiff's car was approximately 6 feet off the asphalt and within two to two and one-half feet of the easternmost rail, and within six or eight inches of the closest crosstie. The left rear was approximately 3 feet off the asphalt. A short time, twenty or thirty minutes, thereafter the defendants' train collided with the rear quarter of the plaintiff's automobile.

The evidence offered upon the trial in Superior Court by the plaintiff, as set out in the record on this appeal, tends to show this narrative of events and circumstances at and about the time of, and in connection with the collision hereinabove referred to:

"I live at 237 Antony Circle, Charlotte, N. C. * * * On November 21, 1958, I had occasion to drive my auto out in the Newell section. Prior to being out there * * * my wife and I had been over to our neighbor's house * * * next door * * * We stayed there somewhere between 10:30 and 11 o'clock. During that time I had something of an alcoholic nature to drink * * * a couple of highballs * * * After I left * * * I stayed at my home * * * 15 to 20 minutes. I then, went to town to the Hoot Mon to get a sandwich and a cup of coffee, which I did * * *. It took me about ten minutes to drive from my home to the Hoot Mon. As to what time I left the Hoot Mon Restaurant * * * it must have been, in my opinion * * * it was between 11:30 and 12 o'clock. At that time I rode downtown of Charlotte on North Tryon Street to no particular place, just riding * * * As to where else I went, I had no particular place in mind to go and I did not go to any other place than out North Tryon Street, and I saw the sign 'Pecan Grove', and I turned off there. As to why * * * no particular reason * * * turned left, that is when I became lost. I had never been in that vicinity or in the city of Newell, and the first thing I knew I ended up over in that particular area * * * I was trying to get back to U. S. 29 where I was familiar. I recall turning in to this cross-over leading up to the Chinch Road * * * I must have been going north because I made a right turn * * * at the old Concord Road and the road leading over the tracks * * * As to what I did when I turned right off the old Concord Road and onto this cross-over * * * The approach to it is an incline of three to four feet to the level of the crossing, and then just a short distance between the easternmost track there is a downgrade whereby your car comes off the track. Your beam of your lights is not on the road below you * * * After I focused myself, I could easily see that it was no particular road, just a dirt road leading to a dead-end and residences and streets on each side. As I went over the first tracks there * * * the westernmost track, my headlights were directly slightly above the grade of the crossing. As to how fast I was traveling * * * it could not have been more than ten or fifteen miles per hour at the most. Nobody was with me at this time. The condition of the weather was clear. As I proceeded on in an easterly direction I misjudged the turn to the right and as a result of it my car ended up * * * the right rear wheels became lodged in the soft gravel where I had no traction to either go forward or backward * * * I tried to get it out under our own power by going forward and backward * * * I would say at least five minutes. At that time no train was approaching in either direction. I then got out of the car and approached the house occupied by an

elderly couple who were in bed. Then I went back across the tracks and that is where I became aware that Mr. Crowell was going to help me * * * he went and got the fire truck and came back over and I went around the front of my car and he had in the meantime driven the truck up * * * and we were working with the winch there. The first time I heard any signal or knew that the train was approaching was at the time Mr. Crowell said there was a train coming which I could hear also in the distance * * * I did not see it at that time. I looked south. Then we were concerned primarily with getting away. We knew that we could not get the car off the track * * * we were concerned with our personal safety more than we were with the car at that time. He hooked up the truck and drove it out of the way and he ran up the track waving a flashlight * * * He advised me to get back * * * My own personal opinion as to the speed of the train when I first saw it coming down the track is it was going 70 or in excess thereof, miles per hour * * * at the time it struck my auto, apparently was going 50 * * * My opinion is in excess of 50 miles an hour * * * The flashlight was burning when Mr. Crowell was flashing it out there and moving it back and forth. My lights remained on from the time I went across the crossing until the collision."

And the plaintiff recalls saying, on adverse examination, in answer to question whether he had an opinion satisfactory to himself as to what speed the train was moving at the time he first saw it, his answer was "No, I have no idea how fast it was going."

And plaintiff testified: "I made no attempt to go down the track and wave my arms without any light"; that in his opinion about 20 to 30 minutes elapsed from the time his car got "in the ditch off the crossing" and the time that the train first came into sight.

Also on adverse examination plaintiff was asked this question: "Did you have any difficulty there because the crossing was rough, is that what caused you to go off the shoulder, is that what you say?" "And my answer was 'No', I can't attribute the cause of my going off on the shoulder to that." "That was my answer. It is correct."

And Fleet P. Crowell, plaintiff's witness, testified in pertinent part as follows: " * * * I have refreshed my recollection concerning the weather conditions on that night and it was clear. The tracks and the road were dry. I have an opinion as to the speed of the train when I first saw the train as I looked south along the railroad tracks. I would estimate the speed at approximately 70 miles an hour * * * I estimate the speed when the train struck the auto, at the time it struck the auto, I estimate that it was traveling approximately fifty

miles an hour at that time * * * ." And this witness testified that there was nothing wrong with the crossing.

At the close of plaintiff's evidence the defendants moved for judgment as of nonsuit and upon the denial of the motion the defendants rested and renewed the motion. The court denied the second motion and submitted the case to the jury. From judgment on the verdict in favor of the plaintiff, the defendants except and appeal to the Supreme Court, and assign error.

*Sedberry, Sanders & Walker for plaintiff, appellee.*

*W. T. Joyner and Robinson, Jones & Hewson for defendants, appellants.*

WINBORNE, C. J.: Defendants stress for error the overruling of their motion for judgment as of nonsuit at the close of the plaintiff's evidence. In such case the evidence is to be viewed in the light most favorable to the plaintiff, giving to him the benefit of every reasonable inference to be drawn therefrom, and assuming to be true all the facts in evidence tending to support his cause of action. *Ervin v. Mills Co.,* 233 N.C. 415; 64 S.E. 2d 431; *Clontz v. Krimminger, ante* 252.

In order to establish a case of actionable negligence in a suit like the present, the plaintiff must show: First, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances in which they were placed; and, second, that such negligent breach of duty was the proximate cause of the injury— a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed. *Ramsbottom v. RR,* 138 N.C. 38, 50 S.E. 448.

It is also a general rule of law in North Carolina "that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. And in the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout * * * ." *Smith v. Rawlins, ante* 67; *Clontz v. Krimminger, ante* 252.

It would seem, therefore, that when the evidence of the plaintiff is tested by the rules laid down by this Court that the defendants' motion for nonsuit should have been granted. The plaintiff's own

evidence shows that the railroad cross-over was smooth and straight, and not in disrepair. Indeed, plaintiff failed to introduce any evidence tending to show negligence on the part of the defendant railroads in maintaining the crossing. The clue as to the cause of plaintiff's running off the road is stated by him. He testified that he was unfamiliar with the crossing and "misjudged the turn to the right" and as a result his car ended up "lodged in the soft gravel" off the asphalt crossing.

When the evidence, as narrated above, is considered it compels the conclusion that the plaintiff failed to keep a proper lookout and contributed to his own injury. "It is the duty of the driver of a motor vehicle not merely to look, but to keep an outlook in the direction of travel, and he is held to the duty of seeing what he ought to have seen." *Wall v. Bain*, 222 N.C. 375, 23 S.E. 2d 333.

However, it is the plaintiff's contention, that notwithstanding any contributory negligence on his part, the fact that his car was stalled near the railroad tracks was apparent, or in the exercise of due care should have been apparent, to the engineer of the defendants' train in time to have stopped the train and avoided the collision— in other words, that the defendants had the last clear chance to avoid injury to plaintiff's car.

We cannot agree with this contention. The plaintiff's car was not on the tracks, but off the tracks with its headlights shining away from the tracks. Furthermore, plaintiff's witness Crowell testified substantially as follows concerning the flashlight warning signal: " * * * When I was waving this flashlight, I waved it from one side to the other across my body, more or less in the same plane with the ground. When I waved that flashlight that way, the beam of the light was only visible to someone standing in front of it at any distance, only once in every arc. It was not visible when it was over at one side or the other * * * it could be seen as a clear light like a single light bulb * * * We tested it in that manner and you can't see the beam except when it comes in directly with you. You can't see the arc on each side * * * ."

Appearances are governed by the situation as it appears to the engineer, not to the plaintiff. As is said in *Redmon v. RR*, 195 N.C. 764, 143 S.E. 829: "The doctrine does not apply to trespassers and licensees upon the tracks of a railroad, who, at the time, are in apparent possession of their strength and faculties, the engineer of the train producing the injury, having no information to the contrary. Under such circumstances the engineer is not required to stop his train or even slacken its speed, for the reason that he may assume

until the very last moment of impact that the pedestrian will use his faculties for his own protection and leave the track in time to avoid injury."

Furthermore, this Court has held that a speed of sixty miles per hour on the part of a train traveling through a rural section, nothing else appearing, is not unlawful or negligent. See *Jeffries v. Powell* and *Branch v. Powell*, 221 N.C. 415, 20 S.E. 2d 561. In the present case the plaintiff has introduced no evidence tending to show that the speed of the train would come within the exception.

In short, there is no evidence in the record that the engineer knew, or by the exercise of due care could have known, that plaintiff's automobile was stranded in a position of peril. As is held in *Mercer v. Powell*, 218 N.C. 642, 12 S.E. 2d 227, the burden is upon the party invoking the doctrine of last clear chance to prove beyond speculation or conjecture every material fact necessary to support issues of (1) helpless condition of plaintiff, (2) that the defendant saw or in the exercise of due care could have seen him and stopped in time to avoid the injury, and (3) that this failure to keep a proper lookout was one of the proximate causes of the injury.

In the instant case plaintiff placed his car in a dangerous position, but there is no evidence that the defendants saw it or should have seen or discovered it in time to avoid the collision. *Temple v. Hawkins,* 220 N.C. 26, 16 S.E. 2d 400; *Ingram v. Smoky Mountain Stages, Inc.,* 225 N.C. 444, 35 S.E. 2d 337.

For reasons stated the judgment from which defendants appeal is Reversed.