## OPAL HERRING v. LLOYD HUMPHREY.

### (Filed 24 May, 1961.)

**1. Negligence § 36—**

The doctrine of attractive nuisance applies only in an action to recover for injury to a child and the doctrine is not a predicate for liability on the part of the owner for injuries resulting when a child sets in motion a dangerous instrumentality which causes damage to the property of a third person.

**2. Negligence § 7—**

Foreseeability is an element of proximate cause, but the law requires only reasonable foresight, judged from the circumstances prior to the occurrence, and does not require that the unusual, unlikely or remotely probable be anticipated.

**3. Negligence § 24a— Evidence held insufficient to show negligence in leaving bulldozer unattended on vacant lot.**

The evidence tended to show that defendant parked his bulldozer upon a vacant lot some 35 to 40 feet from a street, that the bulldozer could be set in motion by any person who intentionally manipulated the starter and gears, that on the occasion in suit children climbed upon the bulldozer and one of them started it in motion, and that the bulldozer, without any person on it, travelled some 300 yards and ran into plaintiff's house, causing the damage in suit. There was no evidence that any child or children had theretofore climbed on the bulldozer, tampered with it in any manner, or had even been observed close thereto. *Held:* The evidence is insufficient to be submitted to the jury on the question of defendant's negligence.

PARKER, J., dissents.

APPEAL by plaintiff from *Parker, J.*, October, 1960, Civil Term, of LENOIR.

Plaintiff's action is to recover damages for personal injuries and for damage to her furniture sustained December 1, 1958, when defendant's bulldozer, "with nobody on it," crashed into the dwelling at 413 East Grainger Avenue (Kinston) in which plaintiff resided.

The dwelling at 413 East Grainger Avenue was west of the track of the Atlantic Coast Line Railroad. To the west of said track, there was, first, a vacant lot, second, a dwelling occupied by Mr. and Mrs. Jake Moore, and third, the dwelling at 413 East Grainger Avenue. To the east of said track, there was, first, the Neuse Distributing Company, second, a vacant lot, and third, Grady's Hardware.

Defendant was engaged in the operation of motor driven equipment, including bulldozers. On December 1, 1958, defendant owned a bulldozer, weighing several tons, which was parked, unattended, on

a vacant lot between the Neuse Distributing Company and Grady's Hardware.

Plaintiff alleged children, playing thereon, set the bulldozer in motion and immediately abandoned it, after which the bulldozer, unattended and out of control, traveled approximately one block, crossing the railroad track and crashing into said dwelling.

Plaintiff alleged the damages she sustained were proximately caused by the negligence of defendant. She alleged, in substance, that the bulldozer "was so constructed and equipped that the switch, including the ignition system could not be locked, and . . . the motor could be started and the said machine set in motion by simply turning the switch on the ignition system and putting the same in gear"; that the bulldozer, in the hands of a child or children of tender years, was a dangerous instrumentality and "its presence in a thickly populated community in which children of tender years were accustomed to play constituted an attractive nuisance"; that defendant knew or should have known that children of tender years frequented the lot where the bulldozer was parked and were attracted by its presence; that defendant knew or should have known that a child of tender years could start the motor and set the bulldozer in motion by turning the switch and putting it in gear or, if left in gear, simply by starting the motor; and that defendant knew or should have known that children "would play upon the said machine, tamper with the switch and other gadgets with which the machine was equipped and start the motor of the said machine and set the said machine in motion, constituting the same a dangerous instrumentality and endangering the life, limb and property of persons in the area in which the said bulldozer was parked."

Elijah Jones (sometimes referred to as Simon Blango) was the only witness who testified as to what started the bulldozer on its destructive course. His testimony, in substance, is set forth in the following numbered paragraphs.

1. Three boys were walking on the paved street (Grainger Avenue) on their way to "Mr. Hill's store, . . . across the street from Grady Hardware." William Blango, referred to as Elijah's brother, had been sent to the store by his father. William was fourteen. Charlie McKinne, whose age was ten years, eight months and four days, and Elijah, who was ten but younger than McKinne, went along with William.

2. The three boys were on the opposite side of the street when they saw the bulldozer. It was "parked on the side of Grady's," 35 to 40 feet back from Grainger Avenue. There was no fence between the street and the bulldozer. McKinne went over to where the bulldozer was and Elijah soon followed him. Both got on the bulldozer. William did not stop but "walked on toward the store." When he saw

McKinne and Elijah on the bulldozer, William told them "to get down," but they "stayed up there."

3. McKinne "pushed down on the piece where *(sic)* starts it." He "cranked it up and jumped down." He "mashed down on the spring, or something, up there to start it. I (Elijah) don't know what it was. When he mashed down, it started going." Elijah jumped off the bulldozer before it started in motion. McKinne jumped off after it started in motion.

4. The bulldozer "kept on going" but "wasn't going fast." It crossed a ditch, then crossed the railroad track. Thereafter, Elijah could not see what happened. McKinne and Elijah joined William at the store and thereafter went home.

On the west side of the track, George S. Taylor "heard the bulldozer and thought it was a train." He testified: "I saw it was a bulldozer coming with nobody on it. It was within 10 yards of the house when I saw it." Again: "The path it came across (was) halfway between the street and Mr. Moore's house because it cracked the walk." He testified the distance from the vacant lot on the north end of Grady's Hardware to the dwelling at 413 East Grainger Avenue was 300 yards.

Reference will be made in the opinion to other features of the evidence.

At the close of plaintiff's evidence, the court entered judgment of involuntary nonsuit. Plaintiff excepted and appealed.

*Jones, Reed & Griffin for plaintiff, appellant.*
*White & Aycock for defendant, appellee.*

BOBBITT, J. Plaintiff's evidence tends to show persons of all ages frequently passed along Grainger Avenue, the railroad track and on or near the vacant lot where the bulldozer was parked. It does not disclose (1) when, why, or by whom, the bulldozer was parked on this vacant lot, or any circumstance incident to the parking thereof, or (2) whether it had been parked at this location on any occasion prior to December 1, 1958, or (3) the ownership of the lot on which it was parked.

The testimony of Elijah Jones is the only evidence as to where the bulldozer was parked. Buck Waters testified the lot referred to by Jones was "between Neuse Distributors and Grady Hardware." Presumably, the bulldozer was on a portion of the vacant lot that extended beyond (north) of any building or structure of Neuse Distributors.

Elijah Jones testified this "was the first time (he) had been there." There is no evidence that Charlie McKinne had been there on any

prior occasion. McKinne, although in Kinston, did not testify. Mrs. Cogdell, case worker for Lenoir County Welfare Department, testified that McKinne had been "to Morrison Training School, Hoffman, sent there by the Juvenile Court on an accumulation of charges, one of which was his admission of his participation in driving the bulldozer, truancy, and . . . was . . . on violation of court probation."

There was no evidence as to whether the bulldozer was so constructed and equipped that the ignition system could not be locked. Nor was there evidence as to whether the bulldozer was left in gear when parked.

Jones and McKinne, when they got on the bulldozer, were intermeddlers and trespassers and were well aware of that fact. They refused to heed William Blango's warning "to get down." It was after dark. Nothing appears to indicate any other person was near the bulldozer. McKinne's prior experience, if any, with automotive equipment is not disclosed. Whatever he did, it was sufficient to start the motor and to set the bulldozer in motion. There was no evidence, apart from the testimony of Jones, as to how the bulldozer could be set in motion.

Neither Jones nor McKinne was injured. The attractive nuisance doctrine, considered recently in *Dean v. Construction Co.*, 251 N.C. 581, 111 S.E. 2d 827, applies only in favor of (injured) children of tender years. 38 Am. Jur., Negligence § 156; 65 C.J.S., Negligence § 29 (11). It is an exception to the general rule "that an owner or person in charge of property has no duty to a trespasser except to refrain from injuring him intentionally, or wantonly." 65 C.J.S., Negligence § 29 (1), p. 457; 38 Am. Jur., Negligence § 144.

The parked bulldozer, until set in motion by McKinne, was harmless. It became dangerous on account of McKinne's wrongful conduct.

The evidence was sufficient to show that defendant knew or should have known the bulldozer, if set in motion and abandoned while in motion, would likely endanger persons or property in the area. It was sufficient to show that the bulldozer could be seen by passersby, including children of tender years. But there was no evidence that any child or children, in play or otherwise, had ever climbed upon the bulldozer or had tampered with it in any manner or had even observed it at close hand. The crucial question is whether, under these circumstances, the evidence is sufficient to support a finding that defendant in the exercise of reasonable care should have foreseen that a trespassing child would likely get on the bulldozer and set it in motion.

In *Campbell v. Laundry*, 190 N.C. 649, 130 S.E. 638, cited by plaintiff, the action was for the wrongful death of a four-year old boy. There, the parking of the laundry truck in violation of the city ordi-

nance constituted the alleged negligence. Similarly, in *Arnett v. Yeago,* 247 N.C. 356, 100 S.E. 2d 855, an action for injury to a three-year old boy, the parking of the automobile in violation of statutes constituted the alleged negligence. See Annotation, "Liability for damage or injury by stranger starting motor vehicle left parked on street." 51 A.L.R. 2d 633. As stated by *Higgins, J.,* in *Williams v. Mickens,* 247 N.C. 262, 264, 100 S.E. 2d 511: "Negligence in the *Campbell* case consisted in the leaving of a motor vehicle illegally parked in such condition as rendered it dangerous to heedless children who were known by the owner to be exposed to the hazard." This applies equally to the factual situation in the *Arnett* case. Here, the bulldozer was not parked on a public street but on a private lot. It was not set in motion by an accidental touching of a lever or gear shift (as in *Campbell* and *Arnett*) but by McKinne's intentional and deliberate efforts.

It was held in *Williams v. Mickens, supra,* that the owner of an automobile, who had parked his car in a lawful manner but had left the keys in the ignition switch, was not liable for injuries inflicted by the negligent operation thereof by a thief.

Ordinarily, in this jurisdiction, foreseeability of injury is considered an element of proximate cause. *McNair v. Richardson,* 244 N.C. 65, 92 S.E. 2d 459. Thus, in *Campbell* and *Arnett* the question was whether the defendant should have reasonably foreseen consequences of an injurious nature would likely result *from the illegal parking* of the vehicles. Here, there is neither allegation nor evidence that the bulldozer was illegally parked. Moreover, the fact the bulldozer was left in such condition it could be started by any unauthorized person capable of manipulating the starter and gears would not constitute negligence *(Williams v. Mickens, supra)* unless the circumstances were such that defendant should have reasonably foreseen that a trespassing child would likely get on the bulldozer and set it in motion. Under these circumstances, foreseeability is essential to the basic element of negligence.

"The law only requires reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, the party whose conduct is under investigation is not answerable therefor." *Osborne v. Coal Co.,* 207 N.C. 545, 177 S.E. 796. In *Brady v. R. R.,* 222 N.C. 367, 373, 23 S.E. 2d 334, *Devin, J.* (later *C.J.*), quotes with approval this statement: "One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable." See 65 C.J.S., Negligence § 5, p.p. 361-362; 38 Am. Jur., Negligence § 24.

In summary: Defendant's bulldozer was parked, after dark, 35 to 40 feet from Grainger Avenue. It could be seen from Grainger Avenue. It could be set in motion by any person, adult or child, who intentionally and deliberately manipulated the starter and gears. There was no evidence defendant knew or should have known of any prior incident where a bulldozer so parked and equipped had been set in motion by any unauthorized person. There was no evidence that any child or children, in play or otherwise, had ever climbed upon the bulldozer or tampered with it in any manner or even observed it at close hand.

It now appears the bulldozer was started and set in motion by the intentional, deliberate and wrongful conduct of McKinne, a boy then subject to the Juvenile Court. But, "(f) oresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. It is always a question of what reasonably prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated." Shearman and Redfield on Negligence, Revised Edition, § 24.

The conclusion reached is that the evidence was insufficient to support a finding that defendant's bulldozer was parked at such place and in such manner that defendant in the exercise of due care should have foreseen that a trespassing child would likely get on the bulldozer and set it in motion. While a possibility, such an occurrence would seem unlikely, improbable and remote.

While in sympathy with plaintiff's predicament, the evidence here discloses her injuries and damage were caused solely by the intentional, deliberate and wrongful acts of McKinne. Hence, the judgment of involuntary nonsuit must be affirmed.

Affirmed.

PARKER, J., dissents.