GEORGE D. NANCE v. R. B. PARKS.

(Filed 14 January, 1966.)

**1. Trial § 21—**

On motion to nonsuit, plaintiff is entitled to have all of his evidence considered in the light most favorable to him, and contradictions, even in plaintiff's evidence, must be resolved in his favor.

**2. Evidence § 3—**

It is a matter of common knowledge that if the motor of an automobile equipped with automatic transmission is running and its transmission is in "drive", a jolt, vibrations of the motor, or slight pressure on the accelerator may start the car forward, and that absent warning devices an automobile can be driven for a considerable distance with the parking brakes set before the driver notices.

**3. Negligence § 7—**

Proximate cause is one which produces the event in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that injury was probable under the circumstances.

**4. Negligence § 1—**

A person must increase his watchfulness as the possibility of danger increases.

**5. Negligence § 24a— Evidence held for jury on issue of negligence in leaving car with motor running and transmission in drive.**

The evidence tended to show that defendant drove his car to a garage, that one mechanic looked under the hood, then another got on his back on the floorboard to check the wiring under the dashboard, that as the mechanic inched forward, defendant left the vehicle with the motor running, the automatic transmission in drive, and the handbrakes set, that in the process of his work the mechanic's shoulder hit the accelerator and the car lunged forward, injuring a workman who was standing in front of it. *Held:* Injury should have been reasonably foreseen from leaving the car, unattended for practical purposes, with its motor running and the automatic transmission in drive, and therefore nonsuit was improperly entered. Nor does the act of the mechanic in inadvertently pressing the accelerator with his shoulder constitute insulating negligence, since this was reasonably forseeable.

**6. Negligence § 4—**

One who puts a thing in charge of another which he knows to be dangerous or to have characteristics which, in the ordinary course of events, are likely to produce injury to others, owes a duty to give such person reasonable notice of the hazard.

**7. Negligence § 27—**

An intervening act which is reasonably foreseeable by the author of the primary negligence cannot insulate such negligence.

HIGGINS, J., dissenting.

APPEAL by plaintiff from *Walker, S.J.*, June 14, 1965 Schedule C Session of MECKLENBURG.

Action for personal injuries. Plaintiff appeals from a judgment of nonsuit entered at the close of his evidence.

*W. Faison Barnes and Carl W. Howard for plaintiff appellant.*
*Boyle, Alexander and Carmichael for defendant appellee.*

SHARP, J. Taken in the light most favorable to plaintiff, his evidence tends to establish these facts: On the morning of April 13, 1961, defendant drove a 1960 Chrysler New Yorker, an automobile his employer had purchased new approximately six months earlier, into the service garage of Headford Motors, Inc. in Charlotte. This automobile had a 360-horsepower engine and an automatic transmission, which was controlled by push buttons located at the extreme left of the instrument panel. There were buttons for "Drive," "Low," "Reverse," and "Neutral," but none for "Park." Defendant stopped the car inside the garage, a short distance from the rear of a Chrysler Imperial. He set the parking brake, and, leaving the motor running with the transmission in the "drive" position, he got out to report to the service manager that the left-turn signal was not working. At no time thereafter did defendant cut off the motor or change the push-button from "drive." Defendant then got back under the steering wheel and E. N. Buchanan, a mechanic, came to check the signal. At that time, plaintiff, also a mechanic employed by the garage, was leaning against the bumper of the Chrysler Imperial a few feet in front of defendant's car, talking to a third employee. Buchanan got in the car on the right side, lay down on the floorboard, and proceeded to check the wiring under the dashboard. When this endeavor brought him to the steering column, defendant got out and went to a telephone booth about 125 feet away. Although the motor was still running with the transmission in "drive," defendant said nothing to Buchanan about these conditions and Buchanan was unaware of them. He said he neither heard any noise nor felt any vibration from the engine. As he inched his way across the center of the floorboard on his back, his left shoulder hit the gas pedal. The car roared and lunged forward into the rear of the Chrysler Imperial. It, in turn, hit the back of a Plymouth, which then flattened a tar barrel against the wall of the garage. Plaintiff's left leg was crushed between the front bumper of the New Yorker and the rear bumper of the Imperial.

After these "impacts and thuds," the New Yorker came to a stop, and Buchanan "reached over and turned the ignition switch off." He then got out of the car and, observing that others were at-

tending plaintiff, he started the motor and backed the automobile away in order to examine it for damage. None was visible to him. After Buchanan had checked· it, defendant came back to the car and drove it away.

On cross-examination, Buchanan testified as follows:

"As to whether I normally work on cars without seeing whether the engine is running, I don't work on cars that I know the engine is running unless I purposely turn the car on. As to whether it is not a procedure of mine to look and see whether the engine is running, if I get under the steering wheel at any time and have other work to do to the car, I turn the car off, before I leave the car. I know that it is off when I leave it. On this occasion as to whether I made any effort to determine for myself, Mr. Park was in the driver's seat. I assumed that Mr. Park had turned the car off. No, sir, I made no effort myself to determine what conditions were with reference to the brake, the gear or to the engine. I might add that to check these turn signals the ignition has to be on in the accessory position or in the start position. . . ."

This appeal poses only the question whether the foregoing facts, taken as true, withstand defendant's motion for nonsuit. Testimony tending to contradict the preceding version of the accident—as, in some respects, did that of defendant, whom plaintiff called as an adverse witness—is not to be considered in passing upon the motion. Plaintiff is entitled to have all his evidence appraised in the light most favorable to him. *Jenkins v. Electric Co.*, 254 N.C. 553, 119 S.E. 2d 767.

Any person who operates an automobile which is equipped with an automatic transmission knows that, if it is left in "drive" with the  motor running, a jolt may cause it to move forward under its own power; that sometimes vibrations from within the motor itself will feed gas to the carburetor and set the vehicle in motion; and that slight pressure on the accelerator will start the car forward. An automobile left in gear with the motor running is "like a gun loaded and cocked, ready to go off." *Weiss et al v. King*, 151 So. 681 (La. App.). Furthermore, it is a matter of common knowledge that, absent warning devices installed for that purpose, any automobile can be driven for a considerable distance with the parking brake set before the driver notices that he has not released it.

When Buchanan began his examination of the left-turn signal, defendant did not relinquish possession of the automobile to him; defendant remained seated under the steering wheel. Buchanan did not take a seat next to defendant in order to begin his inspection.

On the contrary, he lay down on the floorboard on his back, his head toward the steering column. It was only after Buchanan had inched himself toward the steering column and into close propinquity to him that defendant left the car to make a telephone call. At that time, he knew its transmission was in "drive" and its motor running, yet he did not give this information to Buchanan. Presumably he saw plaintiff and another mechanic standing in between the front of his vehicle and the back of another, for they were in plain sight. Had he put the transmission in "neutral" or turned the motor off, this accident would not have occurred.

Proximate cause is "a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed." *Mattingly v. R. R.*, 253 N.C. 746, 750, 117 S.E. 2d 844, 847. Foreseeable injury is a requisite of proximate cause, which is, in turn, a requisite for actionable negligence. *Osborne v. Coal Co.*, 207 N.C. 545, 177 S.E. 796.

Specifically, the decisive question is one of foreseeable injury, *i.e.*, whether, under the circumstances here disclosed, a reasonably prudent person should have foreseen that some portion of Buchanan's body was likely to come in contact with the accelerator and thus cause the car to move forward with probably injurious consequences to others. *Herring v. Humphrey*, 254 N.C. 741, 119 S.E. 2d 913. This poses a different, although similar, problem from that which would have been presented had the car moved forward "on its own" while defendant was in search of the service manager. In *Storey v. Parker*, 13 So. 2d 88 (La. App.), the defendant drove his Oldsmobile, which was equipped with automatic transmission, to a service station and stopped it at the gas pumps. After making arrangement for services which would require an hour, he got out, leaving the motor running and the transmission in "Hi." A minute or two later, without any outside stimulus, the car started moving. It went into the street, ran over the plaintiff, and finally stopped after colliding with another vehicle. In holding the defendant liable to plaintiff, the court said that had defendant "put the lever in neutral, or even more simply yet, had he turned his motor off, *either of which two things we feel that any reasonably prudent man would have done under the circumstances,* there would have been no accident." 13 So. 2d at 93. (Italics ours.)

Although there were several filling station employees in the immediate vicinity—and one tried unsuccessfully to stop it—the Oldsmobile in *Storey v. Parker, supra,* was "unattended" in the sense that there was no one in a position to control it when it started to

move forward. No one present was "competent to prevent any of the probable dangers" which might result when an automobile is left with its motor running and its transmission in gear. See *Pinyan v. Settle*, 263 N.C. 578, 585, 139 S.E. 2d 863, 869. Here, the Chrysler New Yorker, in the same sense, was equally "unattended," for, although Buchanan was partially inside the vehicle, he was lying on his back on the floorboard.

Today, automobile manufacturers have produced such remarkably quiet and smooth running engines that not infrequently a driver will step on the starter while his motor is running. It was not required that the motor be running for Buchanan to check the turn signal, only that the ignition be in the "accessory" position. But, conceding *arguendo* that defendant might reasonably have assumed that Buchanan knew the motor was running, there appears on this record no basis for defendant to have further assumed that Buchanan knew the car was in "drive." The closer the top of Buchanan's head inched toward the steering column, the greater the danger that the back of his arm or shoulder might hit the accelerator and cause the car to move forward, injuring himself, the two men in front, or all three. That he, a trained mechanic, continued the operation is a circumstance tending to show that he was unconscious of the lurking danger. During the interval defendant first left the car unattended while he sought out the service manager, the danger that it would be set in motion by some external contact or motor vibration was not so great as when he left a mechanic working in close proximity to the accelerator pedal. Buchanan's activity materially increased the risk that the car would move. " '(A) prudent man increases his watchfulness as the possibility of danger mounts.' " *Pinyan v. Settle, supra* at 582, 139 S.E. 2d at 867. We think it is a legitimate inference that, in the exercise of ordinary prudence, defendant could and should have foreseen that such a result was probable under the circumstances. That being so, he had a duty to guard against it.

One who puts a thing in charge of another when he knows it to be dangerous or to have characteristics which, in the ordinary course of events, are likely to produce injury to others, owes a duty to give such person reasonable notice of the hazard. *Stroud v. Transportation Co.*, 215 N.C. 726, 3 S.E. 2d 297. A customer of a garage is negligent if he brings in a motor vehicle and, knowingly and without warning, leaves it in a condition which is likely to cause injury to persons in the garage, and he is liable in damages for the injuries proximately caused thereby. 7A Blashfield, Cyclopedia of Automobile Law and Practice § 5079 (Perm. Ed. 1950).

We hold, therefore, that whether defendant failed to exercise ordinary care so as to make him liable under our laws of negligence is to be judged by the jury in the light of the attendant facts and circumstances. *Rea v. Simowitz*, 225 N.C. 575, 35 S.E. 2d 871, 162 A.L.R. 999.

Defendant's first line of defense was that plaintiff's evidence failed to show that essential element of actionable negligence, foreseeable injury. This perimeter breached, he next contends that his negligence was insulated by the active, intervening negligence of Buchanan "in lying down on the accelerator" without having determined whether the car was in gear or whether the engine was running. Such an argument is untenable. To exculpate a negligent defendant by insulating his negligence, the intervening cause must be one which breaks the connection between defendant's negligence and the injury alleged in such a manner that it itself becomes the proximate cause of the injury. *Riggs v. Motor Lines*, 233 N.C. 160, 63 S.E. 2d 197. As Denny, J. (now C.J.) said in *Bryant v. Woodlief*, 252 N.C. 488, 491-92, 114 S.E. 2d 241, 244:

> "The test of whether the negligent conduct of one tort feasor is to be insulated as a matter of law by the independent act of another, is well settled by our decisions. In *Harton v. Telephone Co.*, 141 N.C. 455, 54 S.E. 299, the Court said: '* * * the test * * * is whether the intervening act and the resultant injury is one that the author of the primary negligence could have reasonably foreseen and expected * * *. We think it the more correct rule that, except in cases so clear that there can be no two opinions among men of fair minds, the question should be left to the jury to determine whether the intervening act and the resultant injury were such that the author of the original wrong could reasonably have expected them to occur as a result of his own negligent act. * * *' "

In this case defendant's primary negligence depends upon whether *he should reasonably have foreseen and expected that Buchanan might depress the accelerator*, thereby causing the car to leap forward with resulting injury to plaintiff or others. If he is negligent, it is because he should have reasonably foreseen this development and guarded against it. And, under the test, *supra*, if it was thus foreseeable it could not afford him insulation. It is entirely possible that defendant and Buchanan might be joint tortfeasors, but it is not possible under the facts of this case that Buchanan's alleged negligence could insulate defendant's conduct.

> "Foreseeable intervening forces are within the scope of the original risk, and hence of the defendant's negligence. The

courts are quite generally agreed that intervening causes which fall fairly in this category will not supersede the defendant's responsibility." Prosser, Torts § 51, p. 312. (3d Ed. 1964.)

To be actionable, of course, defendant's negligence need not be the sole proximate cause of the injury in suit. Ordinarily, an action may be brought against any one or all of joint tortfeasors. *Batts v. Faggart,* 260 N.C. 641, 133 S.E. 2d 504. Here, however, plaintiff, covered by Workmen's Compensation insurance, may not sue Buchanan, a fellow servant. G.S. 97-9.

For the reasons stated, the judgment of nonsuit entered in the court below is

Reversed.

HIGGINS, J., dissenting: I realize there are times and places in which it would be an act of negligence for the owner to stop his automobile in gear with the emergency brake set and the engine running—for example: in a children's playground. But if the vehicle is taken to a garage for repairs, left at the repair counter in the custody of the service superintendent who raises the hood for the purpose of ascertaining the cause of a shortage in the turn signal, such is neither the time nor the place to charge the owner with negligence.

The plaintiff called the defendant as an adverse witness and elicited from him the following testimony:

"I drove my car in the garage and talked to the service manager and advised him that the turn signal would not work. He came up to the car, opened the hood and looked under the hood and there was Mr. Buchanan, I believe it was, that was with him at the time, and they could not find the trouble under the hood. So then Mr. Buchanan said, 'I know where it is; it's under the dash.' So he goes around and gets in the car on the passenger's side and begins to check the wires under the dash and he continued to check them, and at that time it seemed that I might be in his way, so I got out of the car and let them have it."

The mechanic, Mr. Buchanan, testified. ". . . I was not there when the car came in. I came down . . . from working on a car on the second floor . . . Mr. Deason (service manager) called my attention to the car. . . . I did not look under the hood on this car. As to whether anyone else looked under the hood . . . not while I was there. . . . Mr. Parks was in the car before I got in. He got out before I slid across. . . . He got out and went off and then I slid further on over. Then I came across the tunnel and let myself down on top of the accelerator. At that time the car went forward." The

mechanic testified he didn't know, and made no effort to ascertain, whether the engine was running or the vehicle was in gear.

The only possible discrepancy between the plaintiff's evidence from the adverse witness Parks and the witness Buchanan, the mechanic, is whether Buchanan was the mechanic with the service manager, Deason, when the service manager "opened the hood." Mr. Buchanan testified that he came down from the second floor. The defendant and the vehicle were already there; that the service manager was there. He further testified the hood was not raised while he was present. Mr. Parks was positive that the hood was raised by the service manager and he believed Mr. Buchanan was there. Mr. Buchanan does not say, and no one else said, the manager did not raise the hood. The difference in the testimony of Parks, the adverse witness, and Buchanan is more apparent than real. It is not surprising that Mr. Parks could not be positive as to whether Mr. Buchanan was present when the service manager raised the hood. The accident happened on April 13, 1961. The suit was not brought until April 10, 1964, (three days before the action was barred) and the trial did not take place until June, 1965. It is of minor significance whether the mechanic present with Mr. Deason was Mr. Buchanan or some other. The manager did not testify.

I do not agree with the Court's opinion that the evidence of Mr. Parks, the defendant, may be disregarded on the question of nonsuit. He was a plaintiff's witness—adverse to be sure—hence his testimony possibly would not bind the plaintiff to the extent he could, not show the facts to be otherwise. But to the extent Mr. Parks' evidence is not contradicted and the facts not shown to be otherwise, the plaintiff is bound by the testimony since he made it a part of his case. Whether the hood was up—and Mr. Parks says Deason raised it—and neither Deason nor anyone else says he didn't, is material only to show that the defendant knew when he delivered the car to the garage that its agents had knowledge the engine was running. Hence he had a right to assume and to act on the assumption that mechanics working on a vehicle would take all necessary precautions against the dangers incident to a running engine of 360 horsepower. The defendant could not reasonably foresee that (of all persons) a mechanic would lie down on the accelerator of an engine of such power.

The law places before the plaintiff two hurdles: (1) showing defendant was negligent in delivering to the garage his vehicle in gear with the engine running; (2) showing that the owner might reasonably foresee that an automobile mechanic would be so negligent (not to step on) but to lie down on the accelerator which

furnished gas to a running engine. "But it is generally held, that in order to warrant the finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Batts v. Faggart,* 260 N.C. 641, 133 S.E. 2d 504; *Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 808; *Beach v. Patton,* 208 N.C. 134, 179 S.E. 446; *R. R. v. Kellogg,* 94 U.S. 469.

Under the circumstances disclosed by this record, I think if the first hurdle does not stop the plaintiff, the second certainly does. I vote to affirm the nonsuit.